IT IS HEREBY ORDERED that Plaintiffs' Rule 59(e) Motion to Alter or Amend Court Order of March 16, 1992 is GRANTED.

IT IS FURTHER ORDERED that this Memorandum and Order is incorporated into the Memorandum and Order of March 16, 1992.

IT IS FURTHER ORDERED that Third Party Defendant American Red Cross's Request for Clarification as to this Court's Grant of Summary Judgment for the Red Cross is GRANTED.

IT IS FURTHER ORDERED that Defendant American Red Cross's Motion for Summary Judgment as to the Third Party Complaint is GRANTED. Third Party Plaintiffs' claims against Defendant American Red Cross are DISMISSED.

Barbara A. CRITTENDON, Plaintiff,

v.

COLUMBIA ORTHOPAEDIC GROUP, et al., Defendants.

No. 91–4054–CV–C–66BA.

United States District Court, W.D. Missouri, C.D.

June 5, 1992.

Eve M. Riley, St. Louis, Mo., for plaintiff.

Craig A. Van Matre, Craig A. Van Matre, P.C., Columbia, Mo., John B. Renick and James N. Foster, Jr., McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., for defendants.

## ORDER

KNOX, United States Magistrate Judge.

### Introduction

Plaintiff, Barbara Crittendon, filed the above-styled cause on August 15, 1991, claiming race and age discrimination under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes. Named as parties defendant are Columbia Orthopaedic Group (hereinafter referred to as "C.O.G."); Dennis L. Abernathie, M.D., P.C.; Ronald Carter, M.D., P.C.; Glenn L. McElroy, M.D., P.C.; William G. Quinn, M.D., P.C.; Peter K. Buchert, M.D., P.C.; Patrick A. Smith, M.D., P.C.; James F. Eckenrode, M.D., P.C.; and C.O.G. Spine Associates. Upon consent of the parties, this case was transferred to the United States Magistrate Judge to conduct all further proceedings and to enter judgment, pursuant to the provisions of 28 U.S.C. § 636(c). Upon motion by defendants, the court ordered the case bifurcated, to hear first the liability issues and then at a later date, the damage issues. Neither party requested a jury trial; therefore, the bench trial was held on May 19 through 21, 1992, on the liability issues.

### Claims

Plaintiff alleges that from April 3, 1989, until April 16, 1990, she was forced to work in an hostile work environment, subjected to continuing harassment, disparate treatment, and race and age discrimination by agents of defendants. As a result of such environment, plaintiff claims her health and well-being were adversely affected and that because of her age and race, she was unlawfully discharged from employment on April 16, 1990. Plaintiff further alleges that defendants failed to take steps to protect adequately plaintiff's safety after she received a racial threat while on the job.

Plaintiff seeks a permanent injunction prohibiting defendants from engaging in practices which discriminate on the basis of race or age; that defendants provide and carry out policies which provide equal employment opportunities for individuals over the age of forty years or who are black; and reinstatement of plaintiff to her former position of Business Office Supervisor with back pay and benefits and $750,000.00 in compensatory damages and attorney fees and costs.

Defendants contend that neither race nor age was a factor in plaintiff's discharge, that plaintiff was discharged for valid busi-

ness reasons unrelated to age or race. In addition, defendants allege that plaintiff's health was not adversely affected by any unlawful employment practices between April 3, 1989, and April 16, 1990.

### Findings of Fact

Plaintiff, a black female citizen over the age of forty years, at all relevant times resided in Columbia, Missouri. Defendants at all relevant times conducted business in Columbia, Missouri.

Plaintiff was hired by defendants in January, 1983, as a Credit and Collections Clerk, which position she held until April, 1989, when she was promoted to Business Office Supervisor. Plaintiff's supervisors through the years were Diane Chancelor, Gay McCann and Tony Fuller.

Prior to April, 1989, when plaintiff was promoted, it is undisputed that her performance was excellent as the Credit and Collections Clerk. In fact, Tony Fuller, plaintiff's supervisor at the time, made the recommendation that C.O.G. promote plaintiff into the newly created position of Business Office Supervisor, which occurred in April, 1989. The same Tony Fuller recommended that plaintiff be demoted one year later.

As the Business Office Supervisor, plaintiff reported to Tony Fuller, who was the administrator of C.O.G. The Assistant Administrator was Gay McCann, and Diane Chancellor was a supervisor of another area within C.O.G. Plaintiff supervised two insurance clerks, Marcella Batterton and Delores Short; a patient accounts representative, Ruth Forbes; and a part-time position, filled by Lisa Shaw [1]. At the time of plaintiff's promotion, all of the employees she supervised were above the age of forty, except for Lisa Shaw, who was in her twenties.

While in the position of Business Office Supervisor, plaintiff continued to do her collections work as well as supervising the above-mentioned individuals. Plaintiff was the only collections clerk and continued to perform those duties when she became supervisor. Plaintiff completed a probationary period and received good evaluations and a raise at the end of said period.

Throughout plaintiff's tenure as Business Office Supervisor, remarks on plaintiff's evaluations, indicated that her collection work was excellent, but that "improvement [was] needed in supervision and people skills" and that she needed "to more fully develop her supervisory skills" and "develop tact in dealing with other employees outside [her] department." *See* plaintiff's Exhibit "C."

Although plaintiff started her new position with much enthusiasm and strove to excel by finding and attending management skills courses, plaintiff experienced difficulty in relating to other management personnel, her supervisors, and in fulfilling her duties as Business Office Supervisor. Plaintiff also began having difficulty dealing with the stress that accompanied the supervisory position.

Plaintiff got along well with her former co-workers, those she supervised, but never became part of the management team. Plaintiff worked for C.O.G. but tried to work independently of her supervisor, Tony Fuller, and of the other supervisors. Rather than developing a cooperative spirit with Mr. Fuller, plaintiff engaged in activity that undermined his authority, such as telling his supervisor, Dr. Highland, that plaintiff did not trust or respect Mr. Fuller. Whether true or not, such comments are not likely to foster a good working relationship with a person's supervisor. It is not surprising that plaintiff's relationship with Mr. Fuller did not blossom, but rather deteriorated. She tried unsuccessfully to have the chain of command changed so that she would report directly to Dr. Highland, rather than to Mr. Fuller.

Plaintiff's disagreements with other supervisors and Tony Fuller never moderated. Plaintiff did not take criticism from Mr. Fuller and regularly contacted Dr. Highland, a member of C.O.G.'s personnel

---

**1.** Ms. Shaw is the current Business Office Manager of C.O.G. and the individual who plaintiff claims was "groomed" by Tony Fuller and im-

properly placed in the Business Office Supervisor position upon plaintiff's leaving C.O.G.

committee, rather than Mr. Fuller, circumventing the chain of command for the organization. Plaintiff had the right motivation to further the interests of C.O.G., but her inability to work with her colleagues created tension in the office and stress in her life. The conflicts did not result from age or race discrimination, but rather from plaintiff's unwillingness or inability to work with her colleagues. The evidence of race and age discrimination was sporadic and of isolated events.

The court notes that one isolated incident occurred right after plaintiff's promotion in April, 1989, when the son of one of the individuals whom plaintiff supervised threatened plaintiff, apparently because of her race. There is no evidence, however, that those feelings were shared by any of the defendants or their supervisors, and such action clearly was not condoned by defendants. A few other racial remarks may have been made by plaintiff's co-workers, but the court finds them to be isolated and certainly not condoned by plaintiff's supervisor or the defendants. There is no evidence that plaintiff's supervisor or defendants knew of the other remarks about which plaintiff testified. It is clear that had they known, they would have taken stern measures to reprimand anyone using racial slurs.

The stress that plaintiff experienced after becoming a supervisor appeared to exacerbate plaintiff's preexisting medical problem of hypertension. Plaintiff visited the emergency room after a rather disagreeable meeting with Tony Fuller, and sought the care of her physician, Dr. Carol Loeppky. Dr. Loeppky, with plaintiff's permission contacted C.O.G., specifically Drs. Quinn and Highland, to discuss plaintiff's medical condition and the stresses which were placed on plaintiff because of her work environment. When C.O.G. met at their annual meeting, they discussed what action could be taken to assist plaintiff. A decision was made to relieve plaintiff of her supervisory responsibilities and allow her to continue with her credit and collections work. This would have been a demotion. Plaintiff's pay was to remain the same, although she was not advised of that fact. Defendants wanted plaintiff to remain in their employment. The decision to relieve plaintiff of her supervisory responsibilities was made because of concerns for her health and for smooth operation of business functions at C.O.G. Said decision was clearly not motivated by race, age or any impermissible reason other than perhaps a paternalistic concern for her health after plaintiff's doctor contacted defendants.

Dr. Highland, a member of the personnel committee, relayed C.O.G.'s decision to plaintiff in April, 1990. Through a series of meetings and at plaintiff's request, the decision to return plaintiff to her former position was altered to allow plaintiff to continue in the position of Business Office Supervisor for a new probationary period. Plaintiff requested this opportunity because she refused the option of going back to her prior position, even though Dr. Highland encouraged her to stay and take her old job. Plaintiff claimed she could handle the supervisory position, control her stress problems, and wanted the opportunity to try. Tony Fuller, at Dr. Highland's direction, wrote a letter setting forth plaintiff's job criteria and reducing the understanding to writing. Plaintiff objected to specific portions of said letter, which was then rewritten in an effort to make it acceptable to plaintiff. Dr. Highland made every effort to accommodate plaintiff's concerns because he wanted plaintiff to remain with C.O.G. In fact, the final draft of the letter was sent home with plaintiff for the weekend so that she could think about it and discuss it with her husband. Dr. Highland expected plaintiff to sign the letter and continue in her job as supervisor. Upon returning to work on Monday, Dr. Highland asked plaintiff if she was ready to sign the letter and plaintiff refused. Plaintiff was then discharged from employment by Dr. Highland. He believed he had no other choice. Dr. Highland testified the reason for plaintiff's discharge was her failure to return to her prior job or to sign the letter of understanding. The service letter received by plaintiff sets forth termination grounds relating to job performance

as a supervisor, not the failure to sign the letter of understanding. *See* plaintiff's Exhibit "D."

After plaintiff was discharged, C.O.G. promoted Lisa Shaw, a white female under the age of forty years, to the position of Business Office Supervisor. Ms. Shaw has a college degree and prior experience in the office of another orthopaedic group in Springfield, Missouri. The only evidence of age discrimination is Lisa Shaw's age and one disputed comment about hiring younger people. The record reflects there was no significant evidence of age discrimination.

Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission. *See* plaintiff's Exhibit "B." From said charge, plaintiff states that a Right to Sue letter was issued on November 20, 1990.

It is clear that at some stage of plaintiff's employment as the Business Office Supervisor, Tony Fuller began to scrutinize plaintiff's work more closely than that of other supervisors. The court finds that said scrutiny was generated because of plaintiff's failure to work with Mr. Fuller and her efforts to bypass the chain of command and not because of race or age. Plaintiff was over forty years of age and black when Tony Fuller recommended her promotion to Business Office Supervisor, and when he recommended her demotion. There is no evidence that Mr. Fuller's change in attitude about plaintiff was related to race or age. It is even more clear, and plaintiff admits, that Dr. Highland and the other medical defendants were not motivated by race in their decisions concerning plaintiff.

Plaintiff's attempts to restructure the chain of command within the organization by trying to report directly to the physicians only led to further conflict between herself and her supervisor, Mr. Fuller. Plaintiff on one occasion advised Dr. Highland that she did not trust Mr. Fuller. This kind of conduct usually results in closer scrutiny by the supervisor. Plaintiff's age

and race had nothing to do with that scrutiny. Mr. Fuller may not have been the best, or most diplomatic supervisor, but it was not plaintiff's race or age that caused the conflict.

### Legal Standards

Plaintiff claims she experienced race and age discrimination under Title VII of the Civil Rights Act of 1964 as amended by the 1991 Act, the Age Discrimination in Employment Act and the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes.

 The 1991 Amendments to Title VII of the Civil Rights Act are not retroactive. *Fray v. Omaha World Herald Company,* 960 F.2d 1370 (8th Cir.1992). Therefore, to prevail under Title VII of the Civil Rights Act or the Age Discrimination in Employment Act (ADEA), plaintiff must prove that her race or age was a determining or motivating[2] factor in the decision to demote or discharge plaintiff.

The pertinent part of the Missouri Human Rights Act reads:

> It shall be an unlawful employment practice: (1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or handicap of any individual: (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or handicap;....

Mo.Rev.Stat § 213.055 (1992). In analyzing plaintiff's claim under the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes, the court notes that the "Missouri Courts have adopted federal standards enunciated in suits involving claimed violations of the Civil Rights Act of 1964." *Valle Ambulance v. Commission on Human Rights,* 748 S.W.2d 710, 711 (Mo.App.1988) (citing *Midstate Oil Co. v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842 (Mo.1984). Therefore, the anal-

---

**2.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

ysis under Chapter 213 and the Civil Rights Act is the same and the court will not further distinguish between the Acts.

 To make a *prima facie* case of discrimination under Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act[3], plaintiff must show "that she belongs to a protected class; that she was qualified for the job from which she was discharged; that she was discharged; and that after her discharge, the employer sought people with her qualifications to fill the job. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (establishing *prima facie* case for Title VII cases); *Scharnhorst v. Independent School Dist. #710,* 686 F.2d 637 (8th Cir.1982), *cert. denied,* 462 U.S. 1109, 103 S.Ct. 2459, 77 L.Ed.2d 1337 (1983) (same for ADEA)." *Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992). "Once plaintiff establishes a *prima facie* case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the discharge. *See McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824. If defendants meet this burden, plaintiff then must prove by a preponderance of the evidence that defendants' reasons are merely a pretext for discrimination." *Richmond,* at 598. If plaintiff relies on "direct evidence" of discrimination, however, sometimes called a "mixed motive" case, defendants' burden is to show that race or age played no role in the decision to discharge plaintiff.[4]

*Discussion*

 Plaintiff's claims of emotional distress and medical injury arising out of the alleged harassment in the employment setting appear to be covered by the Missouri Workers Compensation Fund and this court has no jurisdiction over these matters. "The law is that Missouri's Workers' Compensation Law provides the exclusive remedy for emotional distress inflicted during the course of employment." *Waldermayer*

*v. ITT Consumer Financial Corp.,* 767 F.Supp. 989 (E.D.Mo.1991) (citing *Russell v. United Parcel Service, Inc.,* 666 F.2d 1188 (8th Cir.1981) and *Harrison v. Reed Rubber Co.,* 603 F.Supp. 1456 (D.C.Mo. 1984)). In *Harrison,* plaintiff brought claims of emotional distress based upon sexual harassment from a male employee.

 Plaintiff admits that defendants, personally, were not motivated by age or race discrimination. She claims that her supervisor, Tony Fuller, defendants' agent, subjected her to closer scrutiny than others, and that his design was to get her fired, or demoted, and that he was motivated by race or age discrimination. Plaintiff, however, has introduced no substantial evidence to explain why Mr. Fuller would have recommended her promotion and given her good evaluations, and then changed his mind within one year, other than the arrival of Lisa Shaw. Defendants, however, have persuaded the court that the change of heart by Mr. Fuller was directly related to plaintiff's inability or unwillingness to work as part of the management team.

In considering plaintiff's claims that she was discharged, or suffered a demotion due to her age or race, it is frequently necessary to decide whether plaintiff has established a *prima facie* case and which burden of proof standard is to be applied. However, regardless of which burden of proof standard is used, and whether plaintiff has established a *prima facie* case, defendants have proved that their decision, first to demote plaintiff, and then to discharge her when she would not accept the demotion and would not sign the letter of understanding, were not motivated in any way by plaintiff's race or age. Said demotion option was a reasonable effort by C.O.G. to accommodate the business needs of the organization and plaintiff's health problems, which were interfering with her ability to do her job. Once plaintiff rejected that offer, it was reasonable for defendants to request that the terms of plaintiff's proba-

---

**3.** Also the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes.

**4.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**980**

tionary period be reduced to writing and signed by plaintiff. Plaintiff's doctor had contacted defendants concerning plaintiff's health for stress-related problems. Plaintiff was not dealing well with the stress and defendants were legitimately concerned whether plaintiff's health would interfere with her ability to satisfactorily perform as a supervisor. Defendants' desire for a written record of their expectations and plaintiff's written agreement with them was reasonable under these circumstances. This decision was not motivated by plaintiff's race or age, it was merely a sound business decision. *See* plaintiff's Exhibit "AA." Every effort was made on C.O.G.'s part to keep said letter confidential to avoid any complications for plaintiff in her position as supervisor and to accommodate plaintiff's requests.

Plaintiff appears to be a sincere, conscientious individual who wanted to do a good job for defendants. Plaintiff's decision not to sign the letter, while unfortunate, was plaintiff's choice. Plaintiff was aware that she might be discharged at the time she refused to sign the letter. Plaintiff hoped that would not be the result, but she understood the risk. Even then, C.O.G. would probably have allowed plaintiff to return to her old position of Credit and Collections Clerk, which she performed so well.

The question before this court is not whether the decision to demote or fire plaintiff was erroneous, or even harsh, but one of whether the decision was motivated, even in part, by plaintiff's race or age. This court finds that defendants' decision was not motivated by race or age. Therefore, this court finds in favor of defendants on plaintiff's claims of race and age discrimination under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes.

IT IS, THEREFORE, ORDERED that plaintiff's motion to examine Dr. Carol Loeppky as a hostile witness is denied as moot. It is further

ORDERED that defendants' motion to dismiss plaintiff's claims of emotional dis-

tress and medical injury resulting from a stressful work environment, is granted on the grounds that this court lacks jurisdiction to adjudicate such claims which fall within the jurisdiction of the Missouri Workers Compensation Law. It is further

ORDERED that judgment be entered for defendants on plaintiff's claims of race and age discrimination under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes. It is further

ORDERED that each party shall pay their own costs.