**VALLE AMBULANCE DISTRICT,**
Plaintiff–Appellant,

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS, Defendant–Respondent.**

No. 53127.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1988.

Application to Transfer Denied
May 17, 1988.

William J. Wegge, Jr., DeSoto, for plaintiff-appellant.

Marilyn Green, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Valle Ambulance District (Ambulance District), appeals from a judgment of the circuit court affirming an order of the Missouri Commission on Human Rights (Commission). The Commission decided that Sara Stewart was discriminated against because of her sex when she was not hired by Ambulance District and that Ambulance District violated RSMo § 296.020 (1978) (now at RSMo § 213.055 (1986)). Ambulance District argues on appeal that the order of the Commission was not supported by substantial and competent evidence. Finding Ambulance District's contention to be meritorious, we reverse.

Ambulance District operates an ambulance service for a 300 square mile area through which run six state highways and a major railroad. In the year prior to the alleged act of sexual discrimination, approximately 200 out of a total of 900 ambulance runs involved automobile accidents. Ambulance District possessed three ambulances; one of these ambulances, which was totally purchased by the State of Missouri and given to Ambulance District, was equipped with vehicle extrication equipment, thus evincing a public policy to encourage the use of such equipment.

In January 1983, a full-time position became available in the Ambulance District. After interviewing between ten and fifteen applicants, three persons were deemed qualified for the position: Winford, Davis and Stewart. Winford and Davis are male; Stewart is female. The administrator of the Ambulance District offered the position to Winford. Winford and Stewart both possessed an emergency medical technician license. The emergency medical technician licensing process contained some classroom and textbook exposure in auto extrication. Winford had completed additional courses in vehicle extrication, defensive driving and the handling of hazardous materials, which courses were beyond the requirements necessary for one to acquire an emergency medical technician license.[1] Winford and Stewart had worked as part-time employees for the Ambulance District. Winford had worked four months and made forty-two ambulance runs; Stewart had worked eleven months and made sixty-nine ambulance runs.

This court notes the applicable standard of review in an action involving an alleged violation of RSMo § 296.020 (1978). The test is not whether there is *some* evidence to support the Commission's decision, but rather, whether the decision is supported by substantial evidence. *Midstate Oil Co. v. Missouri Commission on Human Rights*, 679 S.W.2d 842, 846 (Mo. banc 1984). We must examine whether the Commission could have reasonably made its findings, and reached its result, upon a consideration of all the evidence before it, and set aside decisions clearly contrary to the overwhelming weight of the evidence. *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534, 535 (Mo. banc 1983).

In proceedings involving alleged discriminatory employment practices, Missouri courts have adopted federal standards enunciated in suits involving claimed violations of the Civil Rights Act of 1964. *Midstate Oil Co.*, 679 S.W.2d at 846. The complaining party must first establish a *prima facie* case of racial discrimination. Once that is accomplished, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his action. Then, if the employer is able to set forth such a rationale, the complaining party must demonstrate that the employer's stated reason is in actuality a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *County of St. Louis v. Brooks*, 614 S.W.2d 283, 287 (Mo. App., E.D.1981). In the present case, the

1. Missouri now requires that in order to obtain an emergency medical technician license, one must take the actual "hands' on" twelve hour course which Winford took; lecture and textbook exposure is no longer sufficient.

pivotal issue concerns whether the Ambulance District's stated reason for rejecting Stewart was pretextual. The Ambulance District's administrator testified that he determined that Winford was the more qualified applicant because Winford had additional course work in auto extrication, defensive driving and the handling of hazardous materials.

■ The United States Supreme Court has listed several considerations which are relevant to a showing that an employer's stated reason is but a pretext for discrimination. In a case involving alleged racial discrimination in violation of the Civil Rights Act of 1964, the Court held that "especially relevant" to a showing of pretext would be evidence that white employees involved in acts against the employer of comparable seriousness to the black employee's actions were nevertheless retained or rehired. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825. This court, in *St. Louis County v. Brooks*, 614 S.W.2d 283, 288 (Mo.App., E.D.1981), reversed a judgment by the circuit court which had affirmed the decision of the Commission finding a violation of RSMo § 296.020 (1978), and took notice of the fact that the complaining party, who was black, had "failed to establish that similarly situated white employees were treated differently." *Id.* at 288. Stewart has offered no evidence that men who were in a similar position to herself were hired. Another relevant factor according to the Court is an employer's treatment of the complaining party during a prior term of employment. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825. Stewart's testimony is devoid of any indication that she encountered discrimination during the period when she was employed part-time by the Ambulance District. The Court also states that statistics as to an employer's employment practice may be helpful. *Id.* at 805, 93 S.Ct. at 1825. Ambulance District's employees were almost thirty percent female.

■ In support of the Commission's decision that Ambulance District's reason for not hiring Stewart was pretextual, it set forth several factors. First, the Commission found that vehicle extrication was unrelated to the position open at Ambulance District, in that several employees of Ambulance District testified that they had not performed vehicle extrication and that a crew of two ambulance attendants, which was the customary number of employees sent on an ambulance run, could not safely perform vehicle extrication. However, in order for one to obtain an emergency medical technician license, some classroom and textbook exposure to the subject of vehicle extrication is required. As well, an ambulance funded by the State of Missouri for use by Ambulance District contained vehicle extrication equipment. Thus, it was not reasonable for the Commission to find that vehicle extrication was unrelated to the position open at the Ambulance District.

■ The Commission also cited the policy of the Ambulance District administrator of not pairing two women together on an ambulance crew as indicating a predisposition of the administrator to discriminate against women. The administrator testified that the policy was based upon women's lifting abilities, their safety in bars and jails, and public scrutiny considerations. The Commission labelled these reasons as "stereotyp[ical] notions." This court need not defer to the Commission's gratuitous commentary regarding what the Commission deems to be an employer's stereotyped ideas. *Midstate Oil Co.*, 677 S.W.2d at 847. In fact, the administrator's testimony as to women's lifting abilities was corroborated by two Ambulance District employees who testified that on two occasions a pair of women had encountered difficulty lifting patients. Although the administrator's comments as to women's safety in dangerous situations and public scrutiny considerations may constitute some evidence of a discriminatory animus by the administrator, they do not constitute substantial evidence that the Ambulance District's administrator refused to hire Stewart based on her gender. At the time the position at Ambulance District became open, the Ambulance District employed two women and four men; thus, had Stewart

been offered employment, there would have been no necessity to pair women on ambulance runs.

The Commission also relied on two hearsay statements testified to by Stewart. In the first, Stewart stated that she heard an employee of the Ambulance District tell another employee that Winford would be hired before the interviews had taken place. The Commission itself states that this evidence alone will not support a finding of pretext. In the second, Stewart said that the Ambulance District administrator told her that the hiring decision was based on the interviews. The Commission found that the administrator did not testify to this at the hearing; he testified that Winford's additional courses were the determining factor. However, the administrator's actual testimony shows that the interview process was considered by him to involve a look at "overall experience ... previous things that [the applicants] had been involved in ..."

In conclusion, there was not substantial evidence that Ambulance District's decision to not hire Stewart was motivated by an invidious purpose; rather, the Ambulance District's decision was based on a legitimate and rational consideration. *See Midstate Oil Co.*, 679 S.W.2d at 845.

We reverse the decision of the circuit court.

CRIST and GRIMM, JJ., concur.