**BUCHHEIT, INC., Appellant,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS,**
**Respondent.**

**No. WD 65985.**

Missouri Court of Appeals, Western District.

Feb. 20, 2007.

Lois L. Vander Waerdt, St. Louis, MO, for appellant.

Cyrus C. Dashtaki, St. Louis, MO, for respondent.

Before SMITH, P.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Buchheit, Inc., appeals from a judgment of the circuit court, affirming in part, reversing in part, and remanding an order of the Missouri Commission on Human Rights finding that Buchheit violated section 213.044.1, RSMo 2000,[1] by terminating the employment of Melissa Blessing. Ms. Blessing was terminated after an incident occurred in which Ms. Blessing was the only female participant, while none of the male participants were discharged. In its first point on appeal, Buchheit claims that the commission erred in finding that Buchheit discriminated against Ms. Blessing on the basis of sex when it discharged her, because there is no evidence to support the commission's finding that Buchheit's reason for discharging Ms. Blessing was pretextual or motivated by sex. In its second point on appeal, Buchheit claims that the commission erred in finding that Ms. Blessing was treated less favorably than a similarly situated male employee. In its final point on appeal, Buchheit claims that the commission erred in finding that Buchheit discharged Ms. Blessing on the basis of sex because the commission considered facts in making its decision that were not known to Buchheit at the time of Ms. Blessing's discharge. This court finds that the commission did not err in finding that Buchheit's nondiscriminatory reason for discharging Ms. Blessing was pretextual and in finding that Ms. Blessing was treated less favorably than a similarly situated male employee. This court further finds that the facts the commission considered in making its decision were known to Buchheit at the time of Ms. Blessing's dis-

---

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

charge. Therefore, the judgment of the commission is affirmed.

## Factual and Procedural Background

Buchheit is a family owned retail chain of hardware and building supply stores located in southern Missouri and Illinois. On December 28, 1998, Melissa Blessing began working for Buchheit at its Perryville store as a cashier.[2] Ms. Blessing was later moved to the service desk and occasionally filled in as a cashier. Although Ms. Blessing performed her job well, Ms. Blessing received one verbal warning and one written warning regarding her excessive personal phone calls. Ms. Blessing also attracted many male visitors to her workstation.

During July 1999, Ms. Blessing asked the manager of another Buchheit store if she could transfer to that store. She was interested in transferring, in part, because she was planning to move closer to the store. During their conversation, she mentioned that an employee at the Perryville store was harassing her. The manager reported this and Ms. Blessing was interviewed by Buchheit about the alleged sexual harassment. Despite attempts to get Ms. Blessing to name the employee, she refused to do so.

In response to the telephone problem, in December 1999, the store manager, Mike Smith, transferred Ms. Blessing to the guard shack in the lumberyard to work as a cashier. Buchheit reconfigured the phone system so that Ms. Blessing could not make or receive outside phone calls from the guard shack. Ms. Blessing's duties in the lumberyard included handling customers' loading tickets and receiving payments for the purchase of outside lumber supplies. Occasionally, Ms. Blessing would help a customer load lumber sup-plies. Ms. Blessing's job performance in the lumberyard was very good and her personal telephone calls ceased to be a problem.

Ms. Blessing was the only female employee stationed in the lumberyard. Scott Duvall supervised Ms. Blessing, along with ten male employees who worked in the lumberyard. Mr. Duvall's duties included enforcing Buchheit's policies against horse-play, smoking, and sexual harassment. Mr. Duvall permitted frequent violations of Buchheit's policies and, occasionally, violated them himself. For example, Mr. Duvall was caught smoking in the lumberyard.

As a result, horseplay was not uncommon in the lumberyard. Ms. Blessing's coworkers frequently played pranks on her, including duct-taping her file drawers shut, filling the guard shack with trash, locking her out of the guard shack, and backing a forklift against the door so that it backfired loudly in her ear. The use of foul language was also common in the lumberyard and Ms. Blessing's coworkers frequently ignored her calls to assist customers. Although Ms. Blessing generally tried to ignore the incidents, on the occasion the forklift was backed up against the door to the guard shack, she was so upset that she left the lumberyard in tears and had to be comforted by a former supervisor.

Another incident occurred in February of 2000, when a Buchheit delivery driver sat in Ms. Blessing's chair in the guard shack and refused to get out of her chair. Ms. Blessing attempted to remove the delivery driver from the chair by rolling the chair toward the door with the driver in it. In response, the driver bent Ms. Blessing over his knee and spanked her. Ms. Blessing did not report this incident, but

---

**2.** Ms. Blessing has remarried and is now Melissa Sandler. However, for purposes of this appeal, this court will refer to her as Ms. Blessing.

the delivery driver was later reprimanded when management learned of the incident.

One day in August of 2000, Ms. Blessing was sitting in the guard shack reading a book when she noticed that a group of male employees, including her supervisor, Mr. Duvall, had gathered around the back of a delivery truck that had pulled into the lumberyard. Mr. Duvall approached Ms. Blessing while she was inside the guard shack and asked her to read a sign on the back of a truck as the truck left. Instead, Ms. Blessing walked to the back of the truck and Mr. Duvall pointed to the hand-made sign on the back of the truck that read "show me your boobies, please." Mr. Duvall then encouraged Ms. Blessing to do what the sign said. Ms. Blessing refused, turned, and began walking back to the guard shack. As she walked away, Mr. Duvall and the other male employees continued to encourage Ms. Blessing to lift her shirt. Mr. Duvall also told Ms. Blessing that he would not report her to management. Ms. Blessing then turned and raised her shirt, exposing one side of her bra, and returned to the guard shack. After the incident, Ms. Blessing felt humiliated.

Buchheit's management learned of this incident in October 2000. Buchheit investigated the incident by asking Mr. Duvall if the incident occurred, but no other questions were asked. Buchheit also had Mr. Duvall and Brent Jung, an outside salesman, write out statements about the incident. Other employees working in the lumberyard that day were not questioned or asked to give written statements. Then, on October 23, 2000, Buchheit met with Ms. Blessing and asked her if the incident occurred and if she thought her behavior was appropriate, had her write a statement, questioned her about her alleged sexual activities, and then terminated her. Mr. Duvall received a written

reprimand for his participation in the exposure incident. Thereafter, Buchheit's director of loss prevention, safety and training was asked to investigate the incident. He interviewed some of the other male employees in the lumberyard. None of the other male employees who participated in the incident were disciplined, however, because only Mr. Duvall admitted saying anything. He did not interview Ms. Blessing because she had been terminated before he was asked to investigate.

On November 22, 2000, Ms. Blessing filed a charge of discrimination on the basis of sex against Buchheit with the commission. The commission issued its finding of probable cause on August 9, 2001, and a hearing was held on June 16 and 17, and October 29, 2003. The Hearing Examiner found that Ms. Blessing established a *prima facie* case of gender-based discrimination and that Buchheit's nondiscriminatory reasons for discharging Ms. Blessing were pretextual. On July 19, 2004, the commission issued its decision and order adopting the Hearing Examiner's findings of fact and conclusions of law, and ordered Buchheit to cease and desist its discriminatory practices and awarded back wages in the amount of $1644 and actual damages for deprivation of civil rights and humiliation and emotional distress in the amount of $4000 to Ms. Blessing. On August 24, 2004, Buchheit filed a petition for judicial review in the Circuit Court of Cole County.

On August 19, 2005, the circuit court issued its findings of fact, conclusions of law and judgment affirming in part, reversing in part, and remanding the cause back to the commission. The circuit court found that the commission erroneously found that Buchheit had no basis to discipline Ms. Blessing because Buchheit had a legitimate, nondiscriminatory reason for disciplining Ms. Blessing. Nevertheless,

the circuit court found that terminating Ms. Blessing was disparate treatment when compared to the discipline imposed on Mr. Duvall. The circuit court further found that the award of back pay was appropriate, but reversed the award for deprivation of civil rights and humiliation and emotional distress because it was based upon the commission's improper conclusion that Buchheit had no basis to discipline Ms. Blessing. The cause was remanded to the commission for a determination of whether a damage award should be made for deprivation of civil rights and humiliation and emotional distress. Buchheit filed this appeal.

## Jurisdiction

Before reaching the merits of Buchheit's appeal, this court must first consider the motion to dismiss the commission filed with this court, requesting dismissal of Buchheit's appeal for lack of jurisdiction. In its motion, the commission asserts that the agency decision from which Buchheit appeals is not final because the circuit court remanded the case back to the commission.

The general statutes governing judicial review of agency decisions, in Chapter 536, govern appeals from decisions of the Missouri Commission on Human Rights. Section 536.100, RSMo Cum. Supp.2005,[3] requires a final decision in a contested case before a person is entitled to judicial review. Section 536.100 reads, "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a *final decision* in a contested case ... shall be entitled to judicial review[.]" (Emphasis added.) An agency " 'decision is final if the agency

arrived at a terminal, complete resolution of the case.' " *Parker v. City of Saint Joseph,* 167 S.W.3d 219, 221 (Mo.App. W.D.2005) (citation omitted). The circuit court initially reviews the commission's decisions and, upon review, the circuit court "shall render judgment affirming, reversing, or modifying the agency's order, and may order the reconsideration of the case in the light of the court's opinion and judgment, and may order the agency to take such further action as it may be proper to require[.]" Section 536.140.5, RSMo Cum.Supp.2005.[4] An appeal to this court may be taken from the judgment of the circuit court, as in other civil cases. Section 536.140.6.

In this case, the circuit court remanded the case to the commission because it was "unable to determine whether the award for deprivation of civil rights and the separate award for humiliation and emotional distress should be affirmed in that the commission improperly concluded that Buchheit had no basis to discipline [Ms. Blessing]." In effect, the circuit court found that there was insufficient evidence to support the commission's decision that Buchheit had no basis to discipline Ms. Blessing and, in light of that holding, ordered the commission to reconsider its monetary award to Ms. Blessing. The commission contends that, because the circuit court remanded the case back to the commission, the circuit court's decision is not final for purposes of appeal.

In support of its argument, the commission cites the principle that an "order or judgment ... remanding [a] cause to [an agency] does not constitute a final disposition of the case." *Jones v. Mo.*

---

**3.** All statutory references to section 536.100 are to the 2005 Cumulative Supplement to the Revised Statutes of Missouri 2000.

**4.** All statutory references to section 536.140 are to the 2005 Cumulative Supplement to the Revised Statutes of Missouri 2000.

*Highway & Transp. Comm'n*, 639 S.W.2d 182, 183 (Mo.App. S.D.1982). *See also State ex rel. St. Louis County v. Pub. Serv. Comm'n*, 360 Mo. 270, 228 S.W.2d 1, 3 (1950). Whether an agency's decision is final for purposes of appeal, however, depends on the nature of the remand. Where the circuit court remands a case back to the commission based on insufficient evidence to support the commission's decision or because the commission's decision is not supported by substantial and competent evidence, "there is a final judgment for purposes of appeal." *Campbell v. Labor & Indus. Relations Comm'n*, 907 S.W.2d 246, 248 n. 1 (Mo.App. W.D.1995). *See also Price v. Labor & Indus. Relations Comm'n*, 811 S.W.2d 457, 457–58 (Mo.App. W.D.1991) (circuit court's judgment final for purposes of appeal where the circuit court remanded the case because the commission's decision was not supported by competent and substantial evidence); *Turner v. Labor & Indus. Relations Comm'n*, 793 S.W.2d 191, 194 (Mo.App. W.D.1990) (same). Therefore, because the circuit court's basis for remanding the decision was a lack of sufficient evidence to support the commission's decision that Buchheit had no basis to discipline Ms. Blessing, the decision is final for purposes of appeal.

This evidence is also supported by the Missouri Supreme Court's express rejection of the argument that simply because a circuit court labels a decision a "remand," that the decision is not an appealable decision. *Iron County v. State Tax Comm'n*, 480 S.W.2d 65, 70–71 (Mo.1972). In *Iron County*, the State Tax Commission moved to dismiss the county's appeal on the ground that the order entered by the circuit court was not an appealable order. 480 S.W.2d at 66. The circuit court remanded the commission's decision because the court found that the commission failed to make appropriate findings of fact in accordance with section 536.090 and, there-fore, the circuit court was unable to properly review the administrative action. *Id.* at 70.

On appeal, while the Supreme Court dismissed the appeal as premature, it nevertheless stated, "fear that . . . whenever a Circuit Court, in reviewing an administrative decision, labels its (the Circuit Court's) decision a 'remand' then such a decision cannot be reviewed on appeal by this Court . . . was never intended[.]" *Id.* Rather, the Court explained that the appeal in that case was not final for purposes of appeal solely because the commission failed to make findings of fact from which the circuit court could discern the basis upon which the commission rendered its decision. *Id.* at 70–71. In other words, the Court concluded that the commission's failure to make findings of fact "prevented the trial court from performing its limited review function and which, in turn, prevents this Court from performing its appellate function on the merits of the cause, thus resulting in the appeal being premature." *Id.* at 71.

In this case, the circuit court did not remand the case to the commission because it made insufficient findings of fact. Rather, here, the circuit court's remand was ordered after a decision on the merits. Thus, based on the reasoning of *Iron County*, the circuit court's judgment is final for purposes of appeal.

Nevertheless, the commission relies on *Jones*, 639 S.W.2d at 183, to support its claim that the circuit court's judgment remanding the case to the commission is not final for purposes of appeal. In *Jones*, following review of the commission's decision, the circuit court affirmed two of the commission's orders and remanded the third for further hearing. 639 S.W.2d at 183. No explanation was provided as to why the circuit court remanded for further

hearing one of the orders. On appeal, the Southern District of this court found that "[t]he order or judgment entered ... remanding the cause to the Commission [did] not constitute a final disposition of the case" and, therefore, dismissed the appeal regarding that order as premature. *Id.* The court affirmed the commission's orders related to the commission's other two orders, however. *Id.* In dismissing the appeal associated with the remanded order, the court did not state its reasoning as to why it found the appeal premature. It merely cited *Iron County.* *Jones,* 639 S.W.2d at 183. Consequently, because *Iron County* does not support the commission's claim that Buchheit's appeal is not final for purposes of appeal, neither does *Jones.*

The commission also claims that *St. Louis County,* 228 S.W.2d at 1, supports its position that this court lacks jurisdiction over Buchheit's appeal because the circuit court's remand of the commission's decision did not constitute a final judgment. In that case, the county appealed from a judgment of the circuit court reversing and remanding a report and order of the Public Service Commission for further proceedings. *Id.* at 2. The circuit court, without reviewing the order on the merits, found that the report and order was a nullity because it lacked a showing that a majority of the commission adequately concurred with the report and order. *Id.*

On appeal, the county alleged that the circuit court erroneously remanded the case to the commission. Id. The Missouri Supreme Court disagreed, however, and found that the remand was proper because the circuit court could not review the proceedings on the merits until the commission promulgated a valid report and order. *Id.* at 2–3. Moreover, the Court dismissed the appeal as premature because, in the

absence of a decision on the merits, the judgment of the circuit court was not a final judgment. *Id.* at 3. *See also Labor & Indus. Relations Comm'n v. Hoffman,* 825 S.W.2d 874, 876 (Mo.App. W.D.1992) (circuit court's judgment not final for purposes of appeal where the circuit court remanded the case because the commission had not made a decision on the merits). Again, because the circuit court reviewed the commission's decision on the merits, *St. Louis County* does not support the commission's claim.

In sum, because the circuit court remanded the case due to insufficient evidence to support the commission's decision that Buchheit had no basis to discipline Ms. Blessing, and the circuit court reviewed the merits of the underlying claim, Buchheit's appeal is final for purposes of appeal. The commission's motion to dismiss Buchheit's appeal for lack of jurisdiction is denied. This court now turns to the merits of Buchheit's appeal.

### Standard of Review

"On appeal, this court reviews the decision of the administrative agency, and not that of the circuit court." *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.,* 991 S.W.2d 161, 165 (Mo.App. W.D.1999). "A reviewing court is usually limited to determining if the administrative agency's decision is supported by substantial competent evidence based on the record as a whole, whether the decision is arbitrary, capricious or unreasonable, or whether the agency abused its discretion." *Id.* The evidence is viewed in the light most favorable to the commission's decision, together with all reasonable inferences therefrom. *Conway v. Mo. Comm'n on Human Rights,* 7 S.W.3d 571, 573 (Mo. App. E.D.1999).

## Sufficient Evidence of Pretext

In its first point on appeal, Buchheit claims that there is no evidence in the record to support the commission's finding that Buchheit discriminated against Ms. Blessing by discharging her because of her sex. Specifically, Buchheit asserts that there is no evidence that its claimed basis for discharge of Ms. Blessing, her exposure of her bra in a place open to the public, was pretextual. Buchheit claims that it provided "a nondiscriminatory and undisputed reason for [Ms.] Blessing's discharge—the exposure incident—shifting the burden to the attorney general to show that this reason was a pretext for discrimination." Buchheit asserts that the attorney general failed to establish that Buchheit's proffered reason was not the true reason for discharge.

Buchheit asserts, on appeal, that Ms. Blessing was discharged because she had conduct problems throughout her twenty-two months of employment at Buchheit and her exposure of her bra in an area open to the public was the last straw, causing her discharge. It also claims that she received the same treatment as Ernie, an employee who was also discharged for exposing himself on company property in an area open to the public. Buchheit argues that, while section 213.055 protects against the purposeful discrimination on the basis of sex, "it allows an employer to make an employment decision that adversely affects a person within a protected class so long as that decision was motivated by rational nondiscriminatory considerations reasonably related to the employer's business operations."

Section 213.055 prohibits discrimination in employment. Subsection (1)(a) of section 213.055.1 reads:

It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability[.]

"In proceedings involving alleged discriminatory employment practices, Missouri courts have adopted federal standards enunciated in suits involving claimed violations of the Civil Rights Act of 1964." *Valle Ambulance Dist. v. Mo. Comm'n on Human Rights,* 748 S.W.2d 710, 711 (Mo.App. E.D.1988) (citing *Midstate Oil Co. v. Mo. Comm'n on Human Rights,* 679 S.W.2d 842, 846 (Mo. banc 1984)). In order to prove that an employee has been discharged on the basis of sex, "[t]he complaining party must first establish a *prima facie* case of [sex] discrimination." *Id.* The elements of a *prima facie* case are: "1) the employee belonged to a protected class; 2) she was qualified to perform her job; 3) she suffered an adverse employment action; and 4) she was treated differently from similarly situated males." *Turner v. Gonzales,* 421 F.3d 688, 694 (8th Cir.2005). "The fourth element of a *prima facie* discrimination case also can be met if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.'" *Id.* (emphasis added) (citation omitted). Once a *prima facie* case is established, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his action." *Valle Ambulance Dist.,* 748 S.W.2d at 711. "Then, if the employer is able to set forth such a rationale, the

complaining party must demonstrate that the employer's stated reason is in actuality a pretext for discrimination." *Id.* "[A]n inference of discrimination may sometimes arise 'without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffices to show intentional discrimination." ' " *Young v. Warner–Jenkinson Co.,* 152 F.3d 1018, 1023 (8th Cir.1998) (citation omitted).

Buchheit concedes that the commission proved a *prima facie* case of sex discrimination. Additionally, the commission did not appeal the circuit court's finding that Buchheit presented a nondiscriminatory reason for Ms. Blessing's discharge. Therefore, the issue raised by Buchheit's first point on appeal is whether there was evidence to support the commission's finding that Buchheit's stated reason was actually a pretext for discrimination. On this issue, Buchheit claims that Ms. Blessing failed to prove that she was treated less favorably than a similarly situated male employee and, therefore, Ms. Blessing failed to prove that Buchheit's proffered reasons for her termination were pretextual.

▮▮▮ While it is incumbent on the commission to show that Buchheit's non-discriminatory reason is actually a pretext for discrimination, evidence that an employee was treated less favorably than a similarly situated employee not in the protected class is not "the exclusive means by which a plaintiff may establish an inference of discrimination." *Young,* 152 F.3d at 1022. Inconsistencies in the explanations advanced by an employer for an employee's termination are sufficient to establish that the reasons proffered by the employer were not the true reason for the employee's termination. *Id.* at 1023.

When an employer has offered different explanations for an adverse employment action and when evidence has been pre-sented that would allow a reasonable trier of fact to disbelieve each explanation, the trier of fact may reasonably infer that the employer is hiding something—that is, that the true explanation is unlawful discrimination.

*Id.* at 1024.

At the time that Ms. Buchheit was fired, she was told that she was being terminated only because of her participation in the exposure incident. Ms. Blessing was not given any other explanation or reason for her termination. Mike Smith, the former store manager who discharged Ms. Blessing, testified in his deposition that Ms. Blessing was a very good employee but there were problems with her as an employee. The problems were excessive personal phone calls, a couple of occasions of absenteeism, an alleged sexual harassment claim that she made, her failure to report sexual harassment, and two improper conduct issues. The first incident of improper conduct was when a gentleman turned Ms. Blessing over his knee and spanked her. Mr. Smith said Ms. Blessing's behavior was inappropriate because, even if she did not instigate the incident, she participated in an event that got out of hand. The second incident was the exposure incident, which resulted in her termination.

At the hearing, Mr. Smith testified that he considered several factors in making the decision to terminate Ms. Blessing. He cited Ms. Blessing's excessive personal phone calls, the fact that male employees and customers often hung around the area where she was working, dress code issues, attendance and tardiness issues, her failure to report sexual harassment, and her involvement in the spanking incident as the factors considered in making his decision to terminate Ms. Blessing. Mr. Smith testified that the exposure incident in the lumberyard was "the last straw." He characterized the transfer of Ms. Blessing

to the lumberyard as "a way of giving her a second chance" because she had a couple of written reprimands and Ms. Buchheit was "fast approaching a suspension and/or termination."

Although Mr. Smith testified in his deposition and in his testimony at the hearing that Ms. Blessing had significant conduct problems throughout her twenty-two months of employment at Buchheit and that her exposure of her bra in an area open to the public was the last straw, causing her discharge, the commission did not believe Mr. Smith's testimony that Ms. Blessing's past conduct problems, combined with the exposure incident, compelled her termination under Buchheit's employment policies. In fact, evidence at the hearing demonstrates that Buchheit was exaggerating or fabricating the importance of negative conduct by Ms. Blessing as its basis for her termination. Contrary to Mr. Smith's testimony that Ms. Blessing had numerous conduct violations, she had received only one verbal and one written warning, both pertaining to phone use. When cross-examined, Mr. Smith testified that Ms. Blessing's performance on the job was good and that, after she was moved to the lumberyard, her personal phone calls were controlled. Mr. Smith also testified that Ms. Blessing did not leave her workstation to seek attention from other male employees or customers, and the men in the lumberyard, not Ms. Blessing, instigated the exposure incident.

Ms. Blessing's direct supervisor, Mr. Duvall, testified that Ms. Blessing was a very good employee and had a good work ethic. He testified that he did not have any performance problems with her and that she did not abuse the phone in the guard shack by making personal phone calls. He also said that she did not do anything to encourage the men to hang around the guard shack other than to be friendly and attractive, and Ms. Blessing did not let the men hanging around the guard shack interfere with the performance of her duties.

Ms. Blessing testified that shortly before she was terminated, she rated "very high" on a performance evaluation. She testified that Mr. Duvall told her that it would have been higher, but Mr. Smith, after reviewing the evaluation, told Mr. Duvall that the evaluation was a little too high and to find a reason to knock it down a little bit. Ms. Blessing further testified that even with the "knock downs," she still rated higher than any of the men who worked in the lumberyard.

William George Robertson, department manager for the lumber department, also testified at the hearing that he perceived Ms. Blessing to be a very good employee and he was not aware of any problems until management learned of the exposure incident. At that time, he learned of friction that went on in the lumberyard because Ms. Blessing was "one girl being in an all male surrounding." Prior to Ms. Blessing being terminated, Mr. Robertson talked with Mr. Smith, the store manager. Mr. Robertson suggested to him that moving Ms. Blessing out of the lumberyard and back into the store, as a cashier, could eliminate the problems. Mr. Robertson testified that Mr. Smith was not "interested in [his] opinion whatsoever." Mr. Smith told Mr. Robertson that there were telephone problems and that Ms. Blessing filed a complaint about being harassed a year or so before with somebody at the Sparta store. Mr. Robertson also testified that Mr. Smith had a list of men that Ms. Blessing had allegedly slept with and he called her "a loose woman." At the meeting when Mr. Smith terminated Ms. Blessing, he did not communicate to Ms. Blessing that her prior conduct problems were part of the basis for her discharge. He

did, however, question her about whether she had sex with certain coworkers or customers.

There was also evidence that, although Buchheit claimed to have conducted an investigation of the incident prior to disciplining Ms. Blessing, a thorough investigation did not occur. Mr. Duvall testified that he was only asked if the incident occurred and no other questions. Only Mr. Duvall and Mr. Jung were asked to write out statements.

Finally, at the hearing, there was evidence and argument by counsel indicating that Ms. Blessing was fired because she was the object of sexual harassment by male coworkers; although Buchheit had made a few efforts to control the inappropriate behaviors of her coworkers, it had not been successful;[5] Ms. Blessing was uncooperative in reporting the sexual harassment because of her reasonable fear that male coworkers would make it worse for her; the inappropriate behavior of male coworkers, which Buchheit called "horseplay," created an unprofessional working environment at Buchheit; and that firing Ms. Blessing, the object of the sexual harassment, was Buchheit's solution to the problem of the inappropriate conduct of Ms. Blessing's male coworkers. A male was hired to replace Ms. Blessing in the guard shack.

The inconsistencies between Buchheit's stated reason for terminating Ms. Blessing and its true reason for termination are sufficient to support the inference of discrimination on the basis of sex. There-

fore, the commission did not err in finding that Buchheit's proffered reasons for discharging Ms. Blessing were pretextual. Buchheit's first point is denied.

### Sufficient Evidence of Disparate Treatment

 In its second point on appeal, Buchheit claims that the commission erred in finding that it discharged Ms. Blessing on the basis of sex because the record does not show that Ms. Blessing was treated less favorably than a similarly situated male employee.[6] Specifically, Buchheit claims that the commission erroneously found that Ms. Blessing was similarly situated to Mr. Duvall and that the commission disregarded evidence that Ms. Blessing was treated the same as another male employee who was similarly situated.

 Pretext may be demonstrated by showing that the complainant " 'was treated less favorably than similarly-situated employees outside of [her] protected group.' " *Reed v. Rolla 31 Pub. Sch. Dist.,* 374 F.Supp.2d 787, 805 (E.D.Mo.2005) (citation omitted). Employees in discriminatory discipline cases are similarly situated "only when they are involved in or accused of the same offense and are disciplined in different ways." *Id.* (internal quotation marks and citation omitted). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circum-

---

5. For example, Mr. Duvall testified that he failed to report the exposure incident to anyone because he did not want to get anyone else in trouble and he "just hoped it would go away."

6. Although evidence of disparate treatment is not "the exclusive means by which a plaintiff may establish a inference of discrimination,"

*Young,* 152 F.3d at 1022, and this court finds that Buchheit's inconsistent explanations for its termination of Ms. Blessing are sufficient to support the finding that Buchheit's stated reasons for terminating Ms. Blessing are a pretext for discrimination, this court must address Buchheit's claims raised on its second point on appeal.

stances." *EEOC v. Kohler Co.,* 335 F.3d 766, 776 (8th Cir.2003). "[T]he misconduct of more leniently disciplined employees must be of ' "comparable seriousness." ' " *Id.* (citations omitted).

In this case, Buchheit argues that Ms. Blessing was not similarly situated to Mr. Duvall because Mr. Duvall did not commit the same offense as Ms. Blessing. Although Mr. Duvall did not expose himself in the lumberyard, Mr. Duvall was the instigator of the offense for which Ms. Blessing was terminated. But for Mr. Duvall's encouragement, Ms. Blessing would not have lifted her shirt and exposed one side of her bra. Encouraging an employee to lift her shirt and expose herself is of "comparable seriousness" to exposing one's bra upon request. Therefore, under the circumstances of this case, Mr. Duvall and Ms. Blessing were involved in the same offense.

Next, Buchheit asserts that Ms. Blessing is not similarly situated to Mr. Duvall because Mr. Duvall was Ms. Blessing's supervisor. Although Mr. Duvall was Ms. Blessing's supervisor, Mr. Duvall and Ms. Blessing dealt with and were disciplined by the same supervisor, Mr. Smith. Mr. Duvall and Ms. Blessing were also subject to the same written code of conduct that prohibited all Buchheit employees from engaging in fighting, horseplay, and disorderly or immoral conduct.

Although not cited by Buchheit, this court found five cases where courts have found a supervisor was not similarly situated to a subordinate. In three cases, a supervisor, who was disciplined more severely than a subordinate, argued that the disparate treatment was evidence of discrimination. *Watts v. City of Norman,* 270 F.3d 1288, 1293–94 (10th Cir.2001); *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971–72 (8th Cir.1994); *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1042 (7th Cir.1993). The courts found in those three cases that the supervisors and subordinates were not similarly situated because the supervisors were subject to higher standards. *Watts,* 270 F.3d at 1293–94; *Harvey,* 38 F.3d at 972; *Sarsha,* 3 F.3d at 1042. Two cases reached the same conclusion that a supervisor and subordinate employee were not similarly situated when it was the subordinate who was disciplined more severely than the supervisor was. *Ward v. Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 560–61 (8th Cir.1997); *Thayer v. Vaughan,* 801 N.E.2d 647, 649 (Ind.Ct.App.2004). In *Ward,* however, the court failed to include any analysis to support its conclusion and cited only general cases for the principle that the two employees being compared must be similarly situated. 111 F.3d at 561. In *Thayer,* the court found that the two employees were not similarly situated because there was no evidence in the record to suggest that they were subject to the same standard of conduct. 801 N.E.2d at 649. This court agrees that when a supervisor is subject to a different standard than a subordinate, the two employees may not be similarly situated, but this court is not persuaded that a supervisor can never be found to be similarly situated to a subordinate employee.[7] Where here, for example, the record demonstrates that Mr. Duvall, the supervisor, was held to the same standard as Ms.

---

7. In reaching this conclusion, this court does not reach the issue of whether a supervisor, who is held to a higher standard of conduct, can ever be found to be similarly situated to a subordinate employee, who is held to a lower standard of conduct, when the subordinate employee is disciplined more severely than the supervisor for conduct of comparable seriousness. *See Hargett v. Nat'l Westminster Bank,* 78 F.3d 836, 840 (2d Cir.1996) (finding that trial court did not err in allowing the jury to consider disparate treatment of a higher-up who was held to a higher standard of conduct).

Blessing, the subordinate, there is no reason to distinguish the two positions. Therefore, because Ms. Blessing and Mr. Duvall participated in the same offense, dealt with the same supervisor, and were subject to the same standards, the commission did not err in finding that Ms. Blessing and Mr. Duvall were similarly situated.

Buchheit also claims that Ms. Blessing is not similarly situated to Mr. Duvall because Mr. Duvall and Ms. Blessing had different employment histories. Buchheit contends that Mr. Duvall's employment record is superior to Ms. Blessing's because Mr. Duvall was "a long-term employee promoted to supervisor based on his five and one-half year record as an employee" and that Ms. Blessing had "[twenty-two] months of conduct problems culminating with the exposure incident." Mr. Smith testified that Mr. Duvall's only violation of company policy was that he was caught smoking. The findings of the commission do not support Buchheit's characterization of Ms. Blessing's and Mr. Duvall's work histories. Clearly, the commission did not believe Buchheit's testimony concerning Ms. Blessing's negative conduct. It found that she had only a verbal and a written warning related to her excessive phone usage and that she attracted many visitors at her work stations. The commission did not believe Mr. Smith's testimony concerning numerous additional conduct violations, as detailed *supra*, which it was entitled to do. *Roorda v. City of Arnold*, 142 S.W.3d 786, 789 (Mo.App. W.D.2004).

Additionally, the commission did not believe that Mr. Duvall's work history was as positive as Buchheit portrays. Buchheit overlooks the fact that when Mr. Duvall was reprimanded for his participation in the exposure incident, it was noted in Mr. Duvall's employment file that, in the months leading up to the incident, there were a number of issues that brought Mr. Duvall's ability to manage the lumberyard into question, including permitting and participating in frequent violations of company policy. Specifically, the commission found that "if [Mr.] Duvall's record was clean, it was only because Buchheit chose to make it so." Therefore, Mr. Duvall's employment history is not sufficient to distinguish Buchheit's treatment of Mr. Duvall from its treatment of Ms. Blessing.

Finally, Buchheit claims that Ms. Blessing was treated the same as a similarly situated male employee at another store. On June 22, 1998, Ernie [8] was involuntarily terminated from his full-time position as a contract sales clerk at the Jacksonville store after he was caught smoking and urinating on company property. It is not necessary to evaluate whether Ms. Blessing's exposing a side of her bra is similarly situated to Ernie, who urinated on company property, because Ms. Blessing was similarly situated to Mr. Duvall and the other male co-employees who participated in the event. Comparison of Ms. Blessing's discipline with that of the male employees who participated in the event is much more relevant than comparison of her conduct of showing a side of her bra to that of an employee who exposed his genitals to urinate on company property. Therefore, the commission did not err in finding that Ms. Blessing was similarly situated to Mr. Duvall, but not comparing her discipline with that of Ernie. Buchheit's second point is denied.

### Record Supports Facts Relied Upon by Commission

In its third point on appeal, Buchheit asserts that the commission erred in

---

8. Inclusion of Ernie's last name is not necessary for analysis of the issue, so his privacy is protected by use of his first name only. No disrespect is intended.

finding that Buchheit discharged Ms. Blessing on the basis of sex because the commission considered facts in making its decision that were unknown to Buchheit at the time of Ms. Blessing's discharge. Specifically, Buchheit claims that at the time of Ms. Blessing's discharge it was not aware that some of her male coworkers, other than Mr. Duvall, had participated in the exposure incident. Therefore, Buchheit claims the commission erred in finding that it engaged in disparate treatment of Ms. Blessing compared to her male coworkers, other than Mr. Duvall, because it did not have knowledge of the involvement of other male coworkers until two months after Ms. Blessing had been discharged. Buchheit claims its first knowledge of the involvement of male coworkers came when Ms. Blessing made allegations of additional coworker involvement at an unemployment compensation hearing two months after she was discharged.

Contrary to Buchheit's contention, there was evidence at the hearing to support the finding that, at the time of Ms. Blessing's discharge, Buchheit was aware that several of Ms. Blessing's male coworkers participated in the exposure incident. In Mr. Smith's deposition, he testified that he knew some of the people present during the incident, but he could not recall everyone. He recalled that Mr. Duvall, Bob Hurt, the assistant yard foreman, and Brent Jung, an outside salesman, were present during the exposure incident. He also testified that Jeff Pireick "probably was there." Mr. Smith further testified that three other male employees, Donnie Watkins, Sid Phillips, and Josh Brown, might have been present during the incident.

Mr. Smith also testified in his deposition that, when he spoke with Ms. Blessing at the meeting before she was terminated, she told him she raised her shirt after "the guys" told her to read the bumper sticker and do it. Mr. Smith further testified that "[f]rom what [he understood], there was no single instigator. There was a group of people that I never got a particular name as to this person as an instigator.... That's as much as I could get down to, is the guys." He testified that he was pretty clear that "the guys were the instigators," and he agreed that "[t]he guys started the incident, and Melissa Blessing, then, participated in the incident at the instigation of the men." Finally, Mr. Smith testified that none of the male employees, with the exception of Mr. Duvall, were disciplined as a result of their participation in the exposure incident.

This evidence supports the commission's finding that Buchheit was aware that several male employees were present and participated in the exposure incident. Therefore, in making its decision, the commission did not improperly consider facts that were unknown to Buchheit at the time of Ms. Blessing's discharge. Buchheit's third point is denied.

The judgment of the commission is affirmed.

All concur.