

# In the
# Missouri Court of Appeals
## Western District

**DAVID KUBIAK,**
         **Respondent,**

                              **WD85529**
                          **OPINION FILED:**
                           **May 9, 2023**

**v.**

**MISSOURI STATE BOARD OF NURSING,**
         **Appellant.**

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon Edward Beetem, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge,
Thomas N. Chapman, Judge

David Kubiak ("Kubiak") is a registered nurse and holds a nursing license from the Missouri Board of Nursing ("Board"). On October 19, 2021, the Board's attorney filed a complaint entitled "Request for Disciplinary Hearing," requesting the Board to hold a hearing pursuant to section 335.066.16(1) to determine whether cause existed to discipline Kubiak's nursing license. The Board's complaint alleged that Kubiak had pled guilty to

three driving while intoxicated ("DWI") offenses, section 577.010,[1] in 1998, 2003, and 2021. Following the evidentiary hearing, the Board placed Kubiak's nursing license on probation, in accordance with the terms and conditions outlined in the order. Kubiak filed a petition for judicial review of the Board's decision with the Circuit Court of Cole County ("circuit court"). The circuit court reversed the Board's decision and remanded the matter to the Board with instructions to dismiss the action in its present form.[2] This appeal follows.

"In an appeal from a judgment of a circuit court addressing the decision of an administrative agency, this court reviews the decision of the administrative agency and not the judgment of the circuit court." *Owens v. Mo. State Bd. of Nursing*, 474 S.W.3d 607, 608 (Mo. App. W.D. 2015). "Pursuant to Rule 84.05(e), when the circuit court reverses the decision of an administrative agency, the party aggrieved by the agency's decision files the appellant's brief. Therefore, although the Board filed this appeal as the party aggrieved by the circuit court's decision, [Kubiak] filed the appellant's brief, and the Board filed the respondent's brief." *Id.*

---

[1] All statutory references are to Revised Statutes of Missouri (2016), as updated by supplement, unless otherwise indicated.

[2] The circuit court's judgment stated that the cause was being remanded for dismissal "[f]or the same reasons set out in "this Court's Judgment of April 25, 2022", in the matter of *Brenda Jackson v. Missouri State Board of Nursing*, Case No. 21AC-CC00181". In *Jackson*, the trial court concluded under similar facts that the Board was statutorily precluded from disciplining a nursing license for a charge of DWI without first obtaining a ruling from "the Administrative Hearing Commission utilizing the procedures of [section] 335.066.16 RSMo.", because DWI is not a crime of "moral turpitude" or a crime related to a nurse's ability to practice as a nurse under 335.066.16(1).

On appeal, Kubiak argues: (1) the Board erred in placing his nursing license on probation because it lacks statutory authority to issue a disciplinary order without a finding of cause for discipline by the Administrative Hearing Commission ("AHC"), in that a plea to a misdemeanor charge of DWI is not a crime of moral turpitude; and (2) the Board's probationary terms failed to consider the limitations of the Americans with Disabilities Act, in that the terms are based on speculation, stereotypes, or generalizations about individuals with disabilities rather than actual risks. Kubiak also argues that this Court lacks appellate jurisdiction because the circuit court's judgment was not a final, appealable judgment. We conclude that this Court has appellate jurisdiction to consider this appeal, and we affirm the circuit court's judgment reversing the Board's order to discipline Kubiak.

**Factual & Procedural Background**

Kubiak holds a license as a registered professional nurse in the State of Missouri, which was current and active at all relevant times. In April 2021, Kubiak submitted his application for renewal of his nursing license and reported in response to the questions on the form that he had pled guilty to a DWI offense, section 577.010, a class B misdemeanor on January 7, 2021. Kubiak was sentenced to 180 days in jail, with the execution of sentence suspended pending completion of two years of unsupervised probation. Kubiak's criminal record also revealed that he pled guilty to the charge of DWI on December 17, 1998, and was sentenced to thirty days in jail with the execution of sentence suspended pending completion of two years of unsupervised probation, and he had pled guilty to a class A misdemeanor DWI, section 577.010, on January 7, 2003, and was sentenced to 180

days in jail with the execution of sentence suspended pending completion of two years of unsupervised probation.

The Board's legal counsel filed a complaint against Kubiak's license and requested a hearing before the Board to discipline his nursing license, pursuant to section 335.066.16, which reads in relevant part:

(1) The board may initiate a hearing before the board for discipline of any licensee's license or certificate upon receipt of one of the following:

(a) Certified court records of a finding of guilt or plea of guilty or nolo contendere in a criminal prosecution under the laws of any state or of the United States for any offense involving the qualifications, functions, or duties of any profession licensed or regulated under this chapter, for any offense involving fraud, dishonesty, or an act of violence, or for any offense involving moral turpitude, whether or not sentence is imposed.

The Board held a hearing, and Kubiak testified regarding the circumstances surrounding the DWI conviction in 2021. Kubiak testified that he is a recovering alcoholic. After his DWI convictions in 1998 and 2003, he began attending AA meetings, but over time he stopped attending and occasionally relapsed after experiencing traumatic events in his life, such as the sudden death of his mother in a car accident in 2016.

In 2020-2021, Kubiak was working as a nurse in the critical care unit in Columbia, Missouri during the COVID-19 pandemic. Kubiak testified that working as a nurse during the pandemic was "hot and heavy in the September through November during the surge and we were working long hours." At the time, Kubiak was living in a camper outside his home so that he would not expose his family inside the house to the virus. He also worked as a traveling nurse and spent weeks at a time living out of a hotel in St. Louis. Kubiak realized he was becoming increasingly stressed due to the long and demanding hours

4

treating COVID patients, and he continued to take anti-depressant medication, but AA meetings were not allowed at the time due to the pandemic. Further, he was unable to meet with his counselor due to the pandemic.

During the hearing, Kubiak described one incident working in the hospital that was especially difficult and led to the relapse that resulted in the latest DWI offense. On his travel assignment in St. Louis, he had taken care of a nineteen-year-old patient who had been in the hospital for two months. On the last night of his travel assignment, the patient had coded three or four times and eventually died. Kubiak testified that after the patient died, "It was just too much. I finally broke. Broke and went to the beer again." On the drive home from the hospital, Kubiak purchased beer at a grocery store and consumed it while driving, which led to his arrest for DWI. Kubiak also briefly described his DWI arrests in 1998 and 2003, simply describing both DWI offenses as being pulled over after attending parties with friends.

The Board issued findings of fact and conclusions of law. The Board found that it had authority to discipline Kubiak's license, pursuant to section 335.066.16, because Kubiak's multiple DWI convictions within a period of twenty-two years qualify as an offense involving moral turpitude. The Board concluded, "[Kubiak's] repeated DWI offenses are contrary to good morals and the duties one owes other members of society, and places the nursing profession in a negative light. Consequently, there is cause to discipline [Kubiak's] nursing license for his guilty pleas to crimes that constituted moral turpitude." The Board placed Kubiak's nursing license on probation for five years. The terms of the probation, among others, limited Kubiak's working hours, required Kubiak to

5

submit to drug screening, prohibited him from handling certain prescription drugs at his workplace, and required treatment programs and continuing education.

Kubiak sought judicial review of the Board's decision in the circuit court, pursuant to section 536.100. The circuit court vacated the Board's decision and remanded the case "to the Board with instructions that the case, in its present form, be dismissed." The circuit court held that this Court's decision in *Owens*, 474 S.W.3d 607, precluded the Board from disciplining Kubiak's nursing license without a factual determination from the AHC that cause existed to discipline Kubiak's license under section 335.066.2. The circuit court held that the Board's procedure under section 335.066.16 is unauthorized when DWI is the underlying criminal offense. This appeal follows.

## Standard of Review

"In an appeal from the circuit court's review of an administrative agency's decision, this court reviews the agency's decision, not the decision of the circuit court." *Owens*, 474 S.W.3d at 610-11. This Court determines whether the agency's actions "are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." *Id.*; Mo. Const. art. V, section 18. We will affirm the agency's decision unless it:

> (1) Is in violation of constitutional provisions;
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
> (3) Is unsupported by competent and substantial evidence upon the whole record;
> (4) Is, for any other reason, unauthorized by law;
> (5) Is made upon unlawful procedure or without a fair trial;
> (6) Is arbitrary, capricious or unreasonable;
> (7) Involves an abuse of discretion.

6

Section 536.140.2. "We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law concerning an agency's decision de novo." *Owens*, 474 S.W.3d at 611. "On appeal, we review the administrative agency's decision rather than the judgment of the trial court; however, we affirm or reverse the trial court's judgment based upon such review of the administrative decision. *Bird v. Mo. Bd. of Architects,* 259 S.W.3d 516, 520 n.7 (Mo. banc 2008)." *Schumer v. Lee*, 404 S.W.3d 443, 445 (Mo. App. W.D. 2013).

### *Appellate Jurisdiction*

As an initial matter, Kubiak argues this Court lacks appellate jurisdiction because there is no final, appealable judgment from the circuit court. Any party aggrieved by a decision of a trial court may appeal from any final judgment in the case. Section 512.020. A judgment is final "if the agency arrived at a terminal, complete resolution of the case." *Buchheit, Inc. v. Mo. Comm'n on Human Rights*, 215 S.W.3d 268, 274 (Mo. App. W.D. 2007). "A final and, therefore, appealable judgment disposes of all issues for all parties in the case and leaves nothing for future determination." *Schrock v. Gan*, 494 S.W.3d 631, 635 (Mo. App. W.D. 2016).

Generally, an order or judgment remanding a cause to an agency does not constitute a final disposition of the case. *Buchheit*, 215 S.W.3d at 274. However, whether an agency's decision is final for purposes of appeal depends on the nature of the remand. *Id.* at 275. Simply because a circuit court labels a decision a "remand" does not mean that the decision is not appealable. *Id.* (citing *Iron Cty. v. State Tax Comm'n*, 480 S.W.2d 65, 70-71 (Mo. 1972)). "Where the circuit court remands a case back to the commission based on

7

insufficient evidence to support the commission's decision or because the commission's decision is not supported by substantial or competent evidence, there is a final judgment for purposes of appeal." *Id.* (internal quotations omitted).

Here, the circuit court's judgment stated that the Board's order "is vacated, and the case is remanded to the Board with instructions that the case, in its present form, be dismissed." The judgment further stated, "This Judgment does not foreclose the Board from proceeding according to law upon the same allegations. Because of this disposition the Court does not reach the other matters raised in the Petition." Although the circuit court's judgment remands the case to the Board, it is essentially a dismissal without prejudice. *See* Rule 67.03. "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Laske v. Krueger*, 660 S.W.3d 22, 27 (Mo. App. W.D. 2023). "An exception to this general rule is that an appeal can be taken where the dismissal has the practical effect of terminating the litigation in the form presented by the plaintiff." *Id.* Dismissals without prejudice have been held appealable where the dismissal was based on the plaintiff's claims not being covered by the statute upon which the petition was based. *Walters Bender Strohbehn & Vaughan, P.C. v. Mason*, 316 S.W.3d 475, 478 (Mo. App. W.D. 2010). "A common factor of those dismissals without prejudice found appealable was that the plaintiffs could not maintain their actions in the court where the action was filed if the reason for the dismissal was proper." *Doe v. Visionaire Corp.*, 13 S.W.3d 674, 676 (Mo. App. E.D. 2000).

Here, in finding that the Board lacked authority under section 335.066.16 to bring this action against Kubiak, the judgment terminated the litigation in the form presented by

8

the Board and held that if the Board wished to pursue disciplinary action against Kubiak, it must do so in a different forum; that is, the Board must utilize a different statutory scheme and bring a claim against Kubiak to the AHC. *See Owens*, 474 S.W.3d at 614. The circuit court's judgment makes clear, if the Board attempted to pursue the same litigation by filing a complaint against Kubiak pursuant to section 335.066.16, it "would be a futile act." *Laske*, 660 S.W.3d at 27. Therefore, the circuit court's judgment is a final judgment because it adjudicated the Board's legal authority to pursue discipline against Kubiak under section 335.066.16. Accordingly, this Court has jurisdiction to review the Board's order disciplining Kubiak's nursing license.

### *Offense involving moral turpitude*

Kubiak argues the Board erred in entering a disciplinary order against his license because the Board lacked statutory authority to do so without a finding of cause for discipline against his license by the AHC, in that a misdemeanor charge of DWI is not a crime of moral turpitude under section 335.066.16 for which the Board can bypass the AHC. "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). "When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362, 367 (Mo. App. W.D. 2020).

A determination of whether cause exists to discipline a nursing license is generally made by the AHC under section 335.066.2. The Board may cause a complaint to be filed

9

with the AHC against any license holder for any one of the twenty-eight enumerated causes. Section 335.066.2(1)-(28). Among the causes for discipline that the AHC may find is "[h]abitual intoxication or dependence on alcohol, evidence of which may include more than one alcohol-related enforcement contact as defined by section 302.525." Section 335.066.2(21). In that circumstance, the Board must bring an action before the AHC, and only following the AHC's determination that cause for discipline exists may the Board hold a hearing to determine what level of discipline, if any, to impose on the licensee. Section 335.066.3.

In limited circumstances, the Board is permitted to make its own determination regarding cause for discipline, such as when the Board possesses certified court records for an offense involving the qualifications, function, or duties of a nurse or for an offense involving moral turpitude. Section 335.066.16(1)(a). The statute reads, in relevant part:

(1) The board may initiate a hearing before the board for discipline of any licensee's license or certificate upon receipt of one of the following:

(a) Certified court records of a finding of guilt or plea of guilty or nolo contendere in a criminal prosecution under the laws of any state or of the United States for any offense involving the qualifications, functions, or duties of any profession licensed or regulated under this chapter, for any offense involving fraud, dishonesty, or an act of violence, or for any offense involving moral turpitude, whether or not sentence is imposed[.]

. . .

(3) Upon a finding that cause exists to discipline a licensee's license, the board may impose any discipline otherwise available.

This Court interpreted section 335.066.16 in the context of a DWI conviction in *Owens*, 474 S.W.3d at 612. There, we stated that "[m]oral turpitude is defined as an act of

10

baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything done contrary to justice, honesty, modesty, and good morals." *Owens*, 474 S.W.3d at 612 (internal quotations omitted). Quoting *Brehe v. Missouri Department of Elementary & Secondary Education*, 213 S.W.3d 720, 725 (Mo. App. W.D. 2007), the *Owens* Court divided crimes of "moral turpitude" into three categories:

> (1) crimes that necessarily involve moral turpitude, such as frauds; (2) crimes so obviously petty that conviction carries no suggestion of moral turpitude, such as illegal parking; and (3) crimes that may be saturated with moral turpitude, yet do not involve it necessarily, such as willful failure to pay income tax or refusal to answer questions before a congressional committee.

*Owens*, 474 S.W.3d at 612 (internal quotations omitted). If an offense falls into the third category, "an inquiry must be made into the circumstances surrounding the offense to show moral turpitude." *Id.* After surveying several states' laws regarding crimes of moral turpitude in the context of a DWI conviction, we held that "driving while intoxicated is not a crime involving moral turpitude, especially when dealing with a first offense and a conviction as a misdemeanor." *Id.* at 614.

The Board's order placing Kubiak's nursing license on probation acknowledged our holding in *Owens* but distinguished it from this case because Kubiak pled guilty to three DWI offenses, which shows "a recidivist type crime involving an extremely dangerous activity." In *Owens*, Owens had pled guilty to a misdemeanor DWI offense after colliding with another vehicle while under the influence of a prescription drug, carisoprodol. *Owens*, 474 S.W.3d at 609. The Board found that *Owens's* holding was limited to a single,

11

misdemeanor DWI offense and stated that *Owens* "intimated that multiple offenses of driving while intoxicated are offenses involving moral turpitude." In distinguishing this case from *Owens*, the Board found that Kubiak's "repeated DWI offenses are contrary to good morals and the duties one owes other members of society, and places the nursing profession in a negative light."

On appeal, the Board cites cases from other jurisdictions that distinguished multiple DWI convictions from isolated incidents of illegal conduct. For example, in *People v. Forster*, 29 Cal. App. 4th 1746 (1994), an appeals court in California held that the defendant's DWI conviction, which was elevated to a felony conviction because it occurred within seven years of three or more DWI convictions, was a crime involving moral turpitude for purposes of impeachment of the defendant at trial. 29 Cal. App. 4th at 1757-58. The court in *Forster* distinguished its case from a previous California case in which a DWI conviction was not a crime involving moral turpitude because it "involved misdemeanor driving under the influence, not the felony driving under the influence with three prior convictions of driving under the influence." *Id.* at 1757 (citing *In re Carr*, 761 P.2d 1011 (Cal. 1988)). Further, the Board cites other state courts that have distinguished a single DWI conviction from multiple DWI convictions. In *Matter of Oliver*, 493 N.E.2d 1237 (Ind. 1986), the Supreme Court of Indiana found that an attorney's alleged DWI offense did not constitute illegal behavior involving moral turpitude for purposes of a violation of the rules of professional conduct. The court considered the nature of the offense and concluded that the offense did not involve moral turpitude because: the attorney was not a multiple offender or someone with a chronic alcohol problem, the

12

incident was isolated, the attorney was not convicted of a felony, the attorney was charged with a misdemeanor, and the attorney had not caused any personal injury or property damage as a result of the illegal conduct. *Id.* at 1241.

Here, we are not persuaded to depart from our prior holding in *Owens*, which held that driving while intoxicated is not an offense involving moral turpitude. 474 S.W.3d at 614. When reading section 335.066 in context to harmonize all provisions, it is clear that the legislature intended most causes for discipline to be presented first to the AHC for a determination of cause for discipline before the Board may determine what, if any, discipline to impose. The Board's authority to bypass the AHC and initiate a hearing before the Board is limited to the few offenses listed in section 335.066.16, and under *Owens*, the Board does not have authority to initiate a hearing before the Board for a misdemeanor DWI offense, as DWI is not an offense involving moral turpitude or involving the qualifications, functions, or duties of a nurse. Similar to *Owens*, the provisions of 335.066.2 "may be implicated by [Kubiak's] conduct and provide a basis for the Board to file a complaint with the [AHC] seeking a determination that cause exists to discipline [his] nursing license." 474 S.W.3d at 614. In the case of multiple DWI offenses, for example, the legislature has expressed their specific intent that in order for the Board to discipline a nursing license based on habitual intoxication or dependence on alcohol, for which multiple alcohol-related criminal offenses may constitute relevant evidence in support, the Board must first seek a finding that cause exists to discipline the license from the AHC. Section 335.066.2(21). Only if the AHC finds cause for discipline may the Board impose appropriate discipline under section 335.066.3. The Board may not side-step the legislative

13

directive to first file a complaint with the AHC before disciplining Kubiak's nursing license under these facts.

We affirm *Owens's* holding that the Board cannot bypass the AHC in this case and use section 335.066.16 to declare that Kubiak's class B misdemeanor of DWI is an offense involving moral turpitude. *Owens*, 474 S.W.3d at 614. If the Board wishes to discipline Kubiak's nursing license for committing multiple DWI offenses, it must follow the procedures outlined by the legislature. Accordingly, we affirm the circuit court's judgment vacating the Board's order disciplining Kubiak's nursing license. Because Kubiak's third point on appeal addresses the substance of the probationary terms in the Board's order, it is rendered moot.

## Conclusion

The Board erred in placing Kubiak's nursing license on probation because his guilty plea to a misdemeanor charge of DWI is not a crime of moral turpitude. We, therefore, affirm the circuit court's judgment reversing the Board's order to discipline Kubiak and the cause is remanded to the Board to dismiss the current disciplinary action against Kubiak's nursing license. Nothing herein shall prohibit the Board from proceeding with an action before the AHC regarding Kubiak's nursing license.

_____
Gary D. Witt, Judge

All concur

14