# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3668

———————

Matthew O. Hawks,

          Appellant,

v.

J.P. Morgan Chase Bank; System
& Service Tech., Inc.,

          Appellees.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Western District of Missouri.
\*
\*
\*
\*

———————

Submitted: September 21, 2009
Filed: January 21, 2010

———————

Before BYE, SMITH, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Matthew Hawks filed suit against his former employer, J.P. Morgan Chase Bank and System & Service Tech., Inc. (collectively, "defendants"), in Missouri state court under, inter alia, the Missouri Human Rights Act (MHRA). Hawks alleged that defendants discriminated against him on the basis of gender ("Count I") and created a hostile work environment ("Count II").[1] Defendants removed the action to federal

———————

[1]Hawks's complaint also alleged that defendants discriminated against him by denying him short-term disability coverage and protection ("Count III"). Hawks is only appealing the dismissal of Counts I and II. He concedes in his brief that the district court properly dismissed Count III.

district court pursuant to 28 U.S.C. §§ 1441 and 1446. Thereafter, defendants moved to dismiss Hawks's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Hawks failed to timely respond to the motion to dismiss and instead filed a motion for extension of time to respond to the motion to dismiss after the imposed deadline to respond expired. The district court[2] granted the motion to dismiss and did not grant the motion for additional time.[3] Hawks filed a motion to set aside or reconsider the judgment, which the district court denied.

Hawks appeals, arguing that the district court erred in (1) not granting his motion for extension of time to respond to the motion to dismiss; (2) dismissing his complaint under Rule 12(b)(6); and (3) denying his motion to set aside or reconsider the judgment of dismissal. We affirm.

## I. *Background*

Hawks alleged in his complaint that he is "a Caucasian male less than 40 years of age" who "began working for Defendant Syste[m] & Servic[e] Tech[.] as an investor reporter multiple corporate clients." Hawks's immediate supervisor was "Alice Derr, the [Investor Reporting] Manager."

According to Hawks's complaint, his "training was hampered because his immediate supervisor, Alice Derr, was off work as a new mother from roughly September 2006 through the end of the year." He asserted that "[a]s a result of the problems, Plaintiff did not receive any of the promised training." At the inception of his employment, Hawks was trained by "Heather [Hartschen, another supervisor,] and

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[3]The record reflects that the district court never explicitly ruled on the motion for extension of time to respond to the motion to dismiss.

Dave"[4] instead of Derr. In his first review, Hawks's overall performance was rated as "Needs Improvement." In Hawks's second review, conducted six months later, Derr "became more critical," commenting that Hawks's "need to seek assistance is holding him back f[ro]m the ability to retain the necessary skills to perform his job functions." Derr also opined that Hawks "should focus on his role as an Investor Reporting Analyst and gain the skills necessary to be successful in his current role rather than focusing on the thought that 'areas must be improved.'"

In response to the first review, Hawks indicated that Derr should "be patient with this staff on learning the reports. It may take some of us extra time to truly understand why, how[,] and what we report on." Hawks, in an attempt to improve and meet Derr's expectations, suggested a monthly meeting to keep him on track, but Derr declined his request.

According to Hawks, during his training, he "was subjected to obscenities, screaming, belittling, and criticism that was undeserved from his supervisor. The criticism was such that he was subjected to a hostile work environment literally from when Derr returned from her leave until his termination."

Hawks received a written warning for unexcused absences with his second evaluation. Less than two months later, the warning had turned into a dismissal recommendation that Derr and Hawks signed.

Ultimately, Hawks was granted protection under the Family and Medical Leave Act and allowed to return to work approximately four months after his second review. Hawks claimed that his "return to the same supervisor made continued work very hostile" and that he was "forced to leave his work shortly" after his return. According to Hawks, he was "constructively discharged from a very hostile work environment."

---

[4]Hawks failed to provide the last name of "Dave" in his complaint.

Hawks alleged in his complaint that, from the time that he returned to work, he was "forced to endure harassment, criticism, difficulty and trouble. [He] was given job duties and responsibilities without adequate training that [a]ffected his ability to work productively. The harassment was ongoing on a daily basis and was extremely demeaning, embarrassing, humiliating and depressing." He maintained that he "suffered emotional and financial harm" resulting from defendants' conduct.

In Count I, Hawks alleged that he "was wrongly discriminated from his employment because of his sex (male) and was subjected to constant humiliation and criticism from fellow employees and was subjected to a hostile work environment . . . ." According to Hawks, he was "subjected to hostility that *other male employees and female employees* did not receive." (Emphasis added.)

In Count II, Hawks alleged that he was "subjected to a hostile work environment from his employment in retaliation for his efforts to stop the harassment and threats made by his supervisors."

Defendants moved to dismiss Hawks's complaint under Rule 12(b)(6), noting that Counts I and II of Hawks's complaint "relate to claims of discrimination and hostile work environment on the basis of gender, but [Hawks] ma[de] no allegation that he was treated differently than females." Additionally, they pointed out that Hawks claimed to have "endured humiliation and criticism . . . but he d[id] not relate these allegations to gender at all."

Hawks failed to timely respond to defendants' motion to dismiss. Instead, six days after the deadline passed, Hawks moved the district court for an extension of time to respond to the motion to dismiss. In the extension motion, Hawks stated that his counsel "has been involved in two bench trials and one Social Security Disability hearing[] in the past twenty days. Counsel for Plaintiff also was involved in two different mediation efforts to resolve pending case."

Four days after Hawks filed his motion for extension of time, the district court, without ruling on Hawks's motion, granted defendants' motion to dismiss, noting that Hawks did not file any opposition to the motion to dismiss. The district court reasoned that Counts I and II concerned claims of discrimination and hostile work environment based on gender but that Hawks failed to allege in his complaint that he was treated differently than female employees. The district court noted that although Hawks alleged that defendants humiliated and criticized him, he did not connect this conduct to his gender. Finally, the court found that the performance review documents did not make any reference to gender; instead, they focused on Hawks's job performance.

Thereafter, Hawks filed a motion to set aside or reconsider the judgment dismissing his complaint. In the motion, Hawks admitted that his complaint was "inartfully drafted and did not provide sufficient detail" regarding his gender discrimination claim. Hawks's motion included new allegations of "acts of discrimination" that were not asserted in his complaint. The district court denied the motion.

## II. *Discussion*

On appeal, Hawks argues that the district court (1) abused its discretion by not granting his motion for extension of time to respond to defendants' motion to dismiss; (2) erred in granting defendants' motion to dismiss; and (3) abused its discretion in denying his motion to set aside the judgment dismissing his complaint.

### A. *Motion for Extension of Time*

Hawks asserts that the district court abused its discretion in not granting his motion for extension of time to respond to defendants' motion to dismiss because defendants did not object to the motion.

In response, defendants contend that the district court did not abuse its discretion in declining to grant the motion because Hawks failed to show good cause and excusable neglect for not timely filing a response to the motion to dismiss.

According to defendants, an attorney's busy practice schedule, as alleged in Hawks's motion, does not constitute "excusable neglect."

On June 5, 2008, defendants moved to dismiss Hawks's complaint pursuant to Rule 12(b)(6). Under the local rules of the Western District of Missouri, Hawks had 12 days to oppose the motion, but he failed to do so. Instead, 21 days after the motion was filed, Hawks sought an extension of time to respond. In the motion, Hawks stated that his counsel "has been involved in two bench trials and one Social Security Disability hearing[] in the past twenty days. Counsel for Plaintiff also was involved in two different mediation efforts to resolve pending case."

"[Federal Rule of Civil Procedure] 6(b) authorizes the district court to exercise its discretion to permit a motion for substitution beyond the time originally prescribed when the failure to file the motion was the result of excusable neglect." *Kaubisch v. Weber*, 408 F.3d 540, 542 (8th Cir. 2005). Specifically, Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." "The determination as to what sort of neglect is considered excusable is an equitable one, taking account of all relevant circumstances surrounding the party's own omission." *Kaubisch*, 408 F.3d at 543 (internal quotations and citation omitted).

Hawks's assertion in his motion that his counsel was occupied with other hearings does not constitute excusable neglect. *See Harlow Fay, Inc. v. Fed. Land Bank of St. Louis (In re Harlow)*, 993 F.2d 1351, 1353 (8th Cir. 1993) (citing *Clinkscales v. Chevron U.S.A. Inc.*, 831 F.2d 1565, 1569 (11th Cir. 1987) (holding that attorney's busy practice did not constitute excusable neglect under Rule 6(b))); *see also Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003) ("Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences.") (internal quotations and citation omitted); *United States v. Dumas*,

94 F.3d 286, 289 (7th Cir. 1996) ("'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule."); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir. 1981) ("Appellants' motion for additional time to respond [to a summary judgment motion] was filed four days late. It asserts as 'excusable neglect' only that appellants' counsel is a solo practitioner and was engaged in the preparation of other cases. The fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2).").

We hold that the district court did not abuse its discretion in declining to grant Hawks's motion for additional time to file a response to the motion to dismiss.

B. *Motion To Dismiss*

Hawks next argues that the district court erred in dismissing his case under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because (1) he filed a motion for extension of time to file a response to the motion to dismiss to provide additional facts sufficient to allege gender discrimination in violation of the MHRA and (2) these additional facts were contained in his motion to set aside or reconsider the judgment dismissing his case. In his brief, Hawks admits that "[w]hen the Defendants sought to dismiss the matter, the main focus was the initial pleading which did not reveal any specific allegation of discrimination based on sex or to identify the fact that Plaintiff was discriminated on the basis of sex." Nevertheless, he maintains that "[a] fair reading of the petition . . . shows that he is claiming that his female supervisor was out to get him because he was male."

We review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 831 (8th Cir. 2009). "Dismissal is proper when the plaintiff's complaint fails to state a claim upon which relief can be granted." *Id*. at 831–32. Dismissal is not proper when "the factual allegations in a complaint, assumed true . . . suffice to state a claim to relief that is plausible on its face." *Id*. at

832 (internal quotations and citation omitted). We construe the complaint in favor of the nonmoving party. *Id.*

"The MHRA makes it unlawful for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of sex." *Richey v. City of Independence*, 540 F.3d 779, 782 (8th Cir. 2008) (citing Mo. Rev. Stat. § 213.055). "In proceedings involving alleged discriminatory employment practices, Missouri courts have adopted federal standards enunciated in suits involving claimed violations of the Civil Rights Act of 1964." *Buchheit, Inc. v. Mo. Comm'n on Human Rights*, 215 S.W.3d 268, 277 (Mo. App. 2007) (internal quotations and citation omitted). For a plaintiff to prove that he was discharged based on his gender, he must first set forth a prima facie case of sex discrimination. *Id.*

> The elements of a *prima facie* case are: "1) the employee belonged to a protected class; 2) []he was qualified to perform h[is] job; 3) []he suffered an adverse employment action; and 4) []he was treated differently from similarly situated [fe]males." *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005). "The fourth element of a *prima facie* discrimination case also can be met if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.'" *Id.* (emphasis added) (citation omitted). Once a *prima facie* case is established, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for his action." *Valle Ambulance Dist.* [*v. Mo. Comm'n on Human Rights*], 748 S.W.2d [710,] 711 [(Mo. App. 1988)]. "Then, if the employer is able to set forth such a rationale, the complaining party must demonstrate that the employer's stated reason is in actuality a pretext for discrimination." *Id.* "[A]n inference of discrimination may sometimes arise 'without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffices to show intentional discrimination."'" *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1023 (8th Cir. 1998) (citation omitted).

*Id.* at 277–78.

We have already concluded that the district court did not abuse its discretion in declining to grant Hawks's motion for additional time to respond to the motion to dismiss. *See supra* Part II.A. Consequently, we look only to Hawks's original complaint to determine whether Hawks stated a claim of gender discrimination. Hawks's complaint fails to allege facts showing that he was treated differently from similarly-situated female employees. First, in ¶ 25 of his complaint, he states that he "is a Caucasian male who was treated differently from other employees at Defendant" and that he "was subjected to hostility that other male employees and female employees did not receive." Additionally, in ¶¶ 24 and 29 of his complaint, he alleges that he endured humiliation and criticism, but he fails to describe how these allegations relate to his gender. Thus, Hawks has failed to plead facts sufficient to state a claim for gender discrimination.

Accordingly, we hold that the district court properly dismissed Hawks's complaint under Rule 12(b)(6).

### C. *Motion To Set Aside/Reconsider Judgment*

Finally, Hawks maintains that "the information included in the Motion to Reconsider provides adequate information regarding both the claim of discrimination based on sex and discrimination based on a hostile work environment." According to Hawks, his motion to set aside or reconsider the judgment dismissing his complaint includes a "wide variety of information that meets the essential elements" of a gender-discrimination claim.

In response, defendants contend that Hawks never requested leave to amend his complaint, meaning that he has waived his right to do so. Further, even if not waived, defendants assert that Hawks cannot meet the requirements of Federal Rule of Civil Procedure 60(b), which permits a party to seek relief from final judgment. They also insist that, to the extent that Hawks is arguing that the motion for reconsideration was actually a motion for leave to amend his complaint, Hawks cannot now seek leave to

amend because after a complaint is dismissed, the right to amend under Federal Rule of Civil Procedure 15(a) terminates.

After the district court dismissed Hawks's complaint on June 30, 2008, Hawks filed a "Motion To Set Aside/Reconsider the June 30, 2008 Order of Dismissal Regarding Certain Claims Made With Suggestions in Support" on July 24, 2008. Hawks's motion does not cite a federal rule of civil procedure in support of the motion.

We will construe Hawks's June 30, 2008 motion as a request to amend his complaint, as the motion asks the district court to "reconsider the Order and allow him to amend his pleading with regard to the claim of discrimination based on sex."

We have recognized that "[a]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal." *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985). "After a complaint is dismissed, the right to amend under Fed. R. Civ. P. 15(a) terminates." *Id*. "Although a party may still file a motion for leave to amend and amendments should be granted liberally, such a motion would be inappropriate if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action." *Id*. (internal quotations and citation omitted). "A district court does not abuse its discretion in denying a plaintiff leave to amend the pleadings to change the theory of their case after the complaint has been dismissed under Rule 12(b)(6)." *Briehl v. Gen. Motors Corp*., 172 F.3d 623, 629 (8th Cir. 1999); *see also Humphreys v. Roche Biomedical Lab., Inc*., 990 F.2d 1078, 1082 (8th Cir. 1993) ("Leave to amend may still be granted, but a district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for the failure to present the new theory at an earlier time.") (internal quotations and citation omitted).

-10-

In *Dorn*, we held that "[t]he district court's denial of [a plaintiff's] motion for leave to file an amended complaint was entirely proper" where the plaintiff "did not file his motion until approximately three months after the district court entered its judgment of dismissal" and the "district court's order . . . dismissed the complaint on its merits and did not grant [the plaintiff] leave to amend." 767 F.2d at 443. Additionally, although we acknowledged the possibility of giving relief from a final judgment of dismissal under Rule 60 of the Federal Rules of Civil Procedure, we found that

> where, as here, the motion for leave fell short of meeting the requirements of that rule in any real sense, and where, as here, the amended complaint added little, if any, of substance to the original complaint, it was not error for the district court to deny leave to amend three months after final judgment. Assuming that in present circumstances the district court had authority to grant leave to amend, its refusal to do so would be reversed only for abuse of discretion.

*Id*. at 443–44.

The instant case is substantially similar to *Dorn*, as (1) Hawks did not file his motion until nearly a month after the district court entered its judgment of dismissal and (2) the district court never granted Hawks leave to amend his complaint (nor did Hawks request leave to amend prior to the dismissal). *See Dorn*, 767 F.2d at 444. Therefore, the district court did not abuse its discretion in denying Hawks's motion to set aside or reconsider the June 20, 2008 order dismissing Hawks's complaint.[5]

---

[5]In the instant case, the order granting the motion to dismiss was entered on June 30, 2008, but the court did not enter a judgment. The motion to reconsider was filed on July 24, 2008. The district court denied the motion to reconsider on October 16, 2008. Judgment was not entered on the June 30, 2008 grant of the motion to dismiss until the next day, October 17, 2008. Hawks filed his final notice of appeal on November 14, 2008.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

Unlike in *Dorn*, we cannot properly analyze Hawks's July 24, 2008 motion under Rule 60(b) because the motion was filed before the entry of final judgment. *See Sanders v. Clemco Indus.*, 862 F.2d 161, 168 n.12 (8th Cir. 1988) ("While a Rule 59(e) motion in some circumstances may be filed before entry of judgment on a separate document, a district court may not entertain a Rule 60(b) motion filed before entry of final judgment. *See St. Mary's Health Center v. Bowen*, 821 F.2d 493, 498 (8th Cir. 1987). Because we have determined that the parties waived the entry of a separate final judgment in this case, however, the district court properly entertained this motion for reconsideration even if we construe it as arising under Rule 60(b).").