# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1929

_____

Streambend Properties II, LLC; Streambend Properties VIII, LLC

*Plaintiffs - Appellants*

v.

Ivy Tower Minneapolis, LLC, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 9, 2014
Filed: March 30, 2015

_____

Before LOKEN, BYE, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

In October 2004, two Streambend Properties LLC entities, II and VIII (together, "Streambend"), signed purchase agreements to purchase two units in a residential condominium development, Ivy Hotel + Residences, in downtown Minneapolis. Six years later, Streambend filed a multi-count complaint in the District of Minnesota alleging state law contract, fraud, and statutory claims and violations of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1703(a)(2). The initial

defendants were developers Ivy Tower Minneapolis ("Ivy Minneapolis"), Gary Benson, and Jeffrey Laux; their real estate agent, Burnet Realty, LLC ("Burnet"); and their escrow and disbursing agent, Commonwealth Land Title Insurance Company ("Commonwealth"). Culminating a complex procedural history, the district court[1] dismissed ILSA claims against the developers in the Second Amended Complaint ("SAC") for failure to plead fraud with the required specificity; granted summary judgment dismissing the ILSA claims against Commonwealth on the merits; and declined supplemental jurisdiction over the state law claims. Streambend appeals, challenging the denial of leave to amend to add a previously dismissed party, Burnet; the dismissal of the remaining ILSA claims; the denial of leave to file additional amended complaints; and the district court's refusal to exercise supplemental jurisdiction. We affirm.

## I. Procedural Background

Streambend's lengthy SAC alleged that it entered into agreements to purchase two units in the to-be-constructed condominium development in October 2004, secured by earnest money payments totaling $45,490, increased in November 2007 to $63,867.45. Completion of the units was delayed, two additional floors were added without proper disclosure, and earnest moneys were removed from the trust account to pay construction costs without Streambend's permission. Seller (Ivy Tower Minneapolis) allowed mechanics liens to be filed in 2008 and not removed. Burnet advised Streambend in December 2008 that closings would soon be scheduled, but no closing was scheduled for Streambend's units. Streambend requested return of its earnest moneys in March and April 2009. Instead, defendants served a Notice of Declaratory Cancellation stating the deposits were non-refundable. The developers' title to Streambend's units "will be ceded to the primary lender . . . through

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

foreclosure proceedings." "Current Residents" of the development have asked Streambend to permit rental of its unoccupied units, which have substantially increased in value.

Streambend asserted statutory claims for violations of ILSA, the Minnesota Common Interest Ownership Act, and Minn. Stat. §§ 555.01 and 82.75; and common law claims for wrongful cancellation; breach of contract; unjust enrichment; wrongful conversion of trust account funds; negligent misrepresentation; and breach of fiduciary duty. Only the merits of the ILSA claims are at issue on appeal.

The district court dismissed all claims against Burnet on the merits on March 7, 2011. On April 14, the court dismissed the remaining ILSA claims because Streambend did not allege a sufficient connection to interstate commerce. The court declined to exercise supplemental jurisdiction over the state law claims against the non-Burnet defendants, dismissing those claims without prejudice. Streambend appealed the April order, but did not appeal the previous order dismissing Burnet. We reversed, concluding that two paragraphs in the lengthy initial complaint sufficiently alleged a connection to interstate commerce. Streambend Props. II, LLC v. Ivy Tower Mpls., LLC, 451 F. App'x 627 (8th Cir. 2012).

On remand Streambend promptly moved for leave to file a First Amended Complaint ("FAC"), including claims re-adding Burnet as a defendant. The magistrate judge[2] granted leave to amend but held that previously dismissed claims against Burnet were barred by law of the case. The order permitted Streambend to assert two new state law claims against Burnet. The district court later struck all claims against Burnet.

---

[2]The Honorable Arthur J. Boylan, Chief Magistrate Judge of the United States District Court for the District of Minnesota, now retired.

-3-

The FAC added additional developer defendants -- Ivy Tower Development, LLC ("Ivy Development"), alleged to be the sole member of Ivy Minneapolis; and Moody Group, LLC ("Moody"), Wischermann Holdings, LLC ("Wischermann Holdings"), and Goben Enterprises, LP ("Goben"), alleged to be the sole members of Ivy Development. The complaint alleged that Laux was the sole member of Moody and Chief Manager of Ivy Minneapolis and Ivy Development, and that Benson was Goben's general partner. Defendants other than Commonwealth again moved to dismiss.

With the motions to dismiss pending, Streambend moved for leave to file the SAC. Chief Magistrate Judge Boylan granted the motion but denied leave to re-add Burnet as a defendant and to add still more defendants -- Wischermann Partners, Inc., alleged to be the sole member of Wischermann Holdings, and Paul Wischermann, alleged to be CEO of Wischermann Partners, Inc. The Order ended:

> Plaintiffs . . . state that "to any extent Plaintiffs are incorrect in their belief regarding the sufficiency of their allegations [in the proposed SAC], Plaintiffs desire to promptly remedy these deficiencies through amendment." Plaintiffs appear to be stating that in the event defendants proceed to move to dismiss the [SAC], Plaintiffs will again move to amend the complaint to try to deflect defendants' arguments for dismissal. . . . [R]epeated motions to amend in an effort to avoid an ultimate ruling on the merits of one's claims do not serve the interest of justice, but rather operate as a waste of the parties' and the Court's resources. Such motions demonstrate dilatory tactics to avoid dismissal of the action. Plaintiffs have now had more than adequate opportunity to amend their pleadings.

Defendants other than Commonwealth moved to dismiss the SAC. After a February 2013 hearing, despite Judge Boylan's warning, Streambend moved for leave to file a Third Amended Complaint. Judge Boylan stayed consideration of this motion pending the district court's ruling on the motions to dismiss the SAC. On July 10,

-4-

2013, the district court granted the motions to dismiss the SAC, dismissing with prejudice all federal claims except the ILSA claims against Commonwealth, and declining to exercise supplemental jurisdiction over the remaining state law claims. Streambend Props. II, LLC v. Ivy Tower Mpls., LLC, Civil No. 10-4257, 2013 WL 3465277, at *3 (D. Minn. July 10, 2013).

Three days after an August 2013 hearing on Streambend's motion for leave to file a Third Amended Complaint, Streambend moved for leave to file a substitute complaint, referred to by Judge Boylan as the Fourth Amended Complaint. In January 2014, Judge Boylan denied leave to file the Third Amended Complaint and the Fourth Amended Complaint. On March 20, 2014, the district court affirmed Judge Boylan's January Order, granted Commonwealth's motion for summary judgment on the ILSA claims, struck all claims against Burnet in the SAC, dismissed with prejudice all ILSA claims in the SAC against the remaining defendants, and dismissed the pendent state law claims without prejudice. This appeal followed.

## II. The Claims Against Burnet

In March 2011, the district court dismissed Streambend's six claims against Burnet, two under the ILSA and four under state law. When Streambend appealed the April 2011 dismissal of other parties, its Notice of Appeal did not mention the Order dismissing Burnet. During the appeal, Streambend filed a letter with this court stating, "Appellants did not appeal the dismissal of Burnet and it rightfully may be terminated as an appellee at this time." On remand, the district court denied Streambend leave to re-add Burnet to its Amended Complaints because the original claims against Burnet were dismissed with prejudice and Streambend failed to appeal the dismissal.[3]

---

[3]Streambend argues the district court lacked authority to reject the magistrate judge's prior ruling absent an objection or explicit finding the ruling was clearly erroneous or contrary to law. This contention is frivolous. See Thomas v. Arn, 474 U.S. 140, 154 (1985) (the Federal Magistrates Act "does not preclude further review

On appeal, we review this Order for abuse of discretion.  See Hawks v. J.P. Morgan Chase Bank, 591 F.3d 1043, 1051 (8th Cir. 2010).

We reject Streambend's contention that the liberal amendment standard in Rule 15(a)(2) of the Federal Rules of Civil Procedure applies to this issue.  When a party moves to amend a complaint after dismissal, a more restrictive standard reflecting interests of finality applies.  See Hawks, 591 F.3d at 1050-51; United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 824 (8th Cir. 2009).  Applying the stricter standard in this case was particularly appropriate because Streambend sought leave to re-add a party whose prior dismissal was on the merits *and* was not challenged in the earlier appeal.  Compare Hawks, 591 F.3d at 1050-51.  There was no abuse of discretion.  Streambend's cursory Rule 60(b) and estoppel arguments are without merit.  See Park Hill School Dist. v. Dass, 655 F.3d 762, 768 (8th Cir. 2011).

### III. The Remaining ILSA Claims

In granting developers' motions to dismiss the ILSA claims in Count I and Count II of the SAC, the district court concluded (i) that Federal Rule of Civil Procedure 9(b) applies to those claims because 15 U.S.C. § 1703(a)(2)(A)-(C) "proscribes fraudulent conduct," and (ii) that Streambend failed to plead fraud with the particularity that Rule 9(b) requires.  Streambend, 2013 WL 3465277, at *2.  On appeal, relying on our decision in In re NationsMart Corp. Securities Litigation, 130 F.3d 309, 314-15 (8th Cir. 1997), cert. denied, 524 U.S. 927 (1998), Streambend argues that Rule 8(a) rather than Rule 9(b) applies to its ILSA pleadings.  Alternatively, Streambend argues that its allegations in the SAC satisfied Rule 9(b) and, if not, the district court erred in not permitting further amendments.

by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard"); Belk v. Purkett, 15 F.3d 803, 815 (8th Cir. 1994) (district court has "substantial control over the ultimate disposition of matters referred to a magistrate").

**A. Framing the Rule 9(b) Issues.** Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The particularity requirement serves important purposes:

> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997) (quotation omitted); see Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). Claims "grounded in fraud" must meet this heightened pleading requirement. See Roop, 559 F.3d at 822 (False Claims Act); NationsMart, 130 F.3d at 320 (10b-5 action under Securities Exchange Act of 1934). At least some of our sister circuits also apply Rule 9(b) to "associated claims where the core allegations effectively charge fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 & n.4 (1st Cir. 2009) (negligent misrepresentation and breach of fiduciary duty claims); see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[I]n cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud.").

Streambend's ILSA claims alleged that defendants violated the first three subsections of 15 U.S.C. § 1703(a)(2), which provide:

> (a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments . . . in interstate commerce, or of the mails . . .

(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title --

  (A) to employ any device, scheme, or artifice to defraud;

  (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

  (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser . . . .

These provisions incorporate, almost verbatim, Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, a rule "prohibiting fraud by any person in connection with the purchase of securities." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 212 n.32 (1976), quoting the SEC press release issued with Rule 10b-5 in 1942. It is not surprising that Congress looked to the federal securities laws when codifying acts and practices that should be prohibited to protect purchasers in interstate land sale transactions. Thus, § 1703(a)(2) has been described as "a general anti-fraud provision." Rice v. Branigar Org., Inc., 922 F.2d 788, 791 n.4 (11th Cir. 1991); accord United States v. Goldberg, 527 F.2d 165, 167 (2d Cir. 1975) ("general fraud provisions"), cert. denied 425 U.S. 971 (1976).

But that generality, while relevant, does not fully answer the Rule 9(b) question presented in this case, an issue that, to our knowledge, has not been addressed in any published circuit court opinion and in very few district court opinions. In addition to Rule 10b-5, the federal securities laws include Sections 11(a) and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77l(a)(2), which impose strict liability

on persons who sell securities using a registration statement, prospectus, or "oral communication" that includes an untrue statement of a material fact or omits to state a material fact required to make the statements not misleading, the same language used in § 1703(a)(2)(B) and in Rule 10b-5(b). In NationsMart, plaintiffs asserted securities law claims under Sections 11 and 12(a)(2) and Rule 10b-5. The district court dismissed all claims, in part for failing to comply with Rule 9(b). In reversing dismissal of the Section 11 and Section 12(a)(2) claims, we concluded that Rule 9(b) did not apply because the complaint "expressly disavow[ed] any claim of fraud in connection with" those claims, and because fraud is not an element of those statutory claims. 130 F.3d at 315, 319. But we affirmed dismissal of the Rule10b-5 claims because Hochfelder established that proof of scienter is an element of a Rule 10b-5 claim, 425 U.S. at 193, and therefore "a Rule 10b-5 claim is necessarily grounded in fraud." 130 F.3d at 320.

In more recent decisions, our sister circuits have consistently held that the particularity requirement of Rule 9(b) applies to securities law claims under Rule 10b-5, where intent to defraud is an element of the claim. Regarding claims under Sections 11 and 12(a)(2), however, most courts have resolved the Rule 9(b) question by close examination of plaintiff's complaint. The Second Circuit held in Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004), "that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." The Third Circuit fashioned a comparable test in In re Suprema Specialties, Inc. Securities Litigation, 438 F.3d 256, 272-73 (3d Cir. 2006): Section 11 and Section 12(a)(2) "claims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims. In such a case, the fraud allegations [in a separately pleaded Rule 10b-5 claim] cannot be said to 'contaminate' the Section 11 and 12(a)(2) claims if the allegations are pled separately."

We need not decide whether the approach in Rombach and Suprema is consistent with our decision in NationsMart, because this is not a case involving

securities laws claims in which <u>NationsMart</u> would be controlling. Rather, we conclude that this is a sound approach for applying Rule 9(b) to claims under § 1703(a)(2) of the ILSA, a later statute that borrowed remedial language from the far more complex securities law regime. Thus, to solve the Rule 9(b) riddle, we must look closely at the elements of the claims asserted in Count II and at the allegations in Count I of Streambend's SAC.

**B. Count II.** In Count II, Streambend alleged that defendants violated 15 U.S.C. § 1703(a)(2)(A) & (C). The allegations tracked those statutory provisions: "Defendants' devices, schemes or artifices to defraud and/or transactions, practices, or courses of business that operated or would operate as a fraud . . . damag[ed] [Streambend] in an amount exceeding $75,000." Subsections (A) and (C), like Rule 10b-5(a) and (c), are explicitly grounded in fraud. They prohibit the seller of property from "employ[ing] any device, scheme, or artifice to defraud," or "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser." Consistent with <u>NationsMart</u>, the district court correctly determined that these claims are "necessarily grounded in fraud," 130 F.3d at 320, and Rule 9(b) therefore applies.

Streambend further argues that Count II satisfied Rule 9(b). In Count II, Streambend broadly alleged various wrongdoings by "Defendants" or "Developers" after Streambend signed the purchase agreements that allegedly established a "scheme or artifice to defraud" and a course of business that operated "as a fraud or deceit" upon unit purchasers -- for example, "Developers' closing on and conveyance of units to purchasers without providing marketable title to the units," Developers adding two additional floors to the Development, and "Defendants leading Plaintiffs to believe that their earnest monies were safely maintained in the trust accounts when they were not." The SAC defined "Developers" as Ivy Minneapolis, Ivy Development, Moody, Goben, Wischermann Holdings, Wischermann Partners, Inc., Laux, Benson,

-10-

Wischermann, and three John Doe defendants. It defined "Defendants" to include Commonwealth and all "Developers."

A complaint subject to Rule 9(b) "must identify who, what, where, when, and how." Roop, 559 F.3d at 822 (quotation omitted). It must "specify[] the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." Id.; see Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n, 605 F.3d 617, 622 (8th Cir. 2010). The allegations in Count II do not come close to meeting this standard. The SAC attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion. The district court correctly concluded that such vague allegations do not satisfy Rule 9(b). See Trooien v. Mansour, 608 F.3d 1020, 1030 (8th Cir. 2010); Parnes, 122 F.3d at 550. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). The SAC repeatedly alleged that the Count II defendants took action "directly or indirectly through any series or chain of subsidiaries or other entities," and then incorporated all those allegations into Count II. Casting such a broad net in pleading a claim "grounded in fraud" does not satisfy Rule 9(b). There also were no allegations of intentional wrongdoing (scienter) by any defendant.

**C. Count I.** In Count I, Streambend alleged that defendants violated § 1703(a)(2)(B), which prohibits a developer or agent from "obtain[ing] money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made . . . not misleading, with respect to any information pertinent to the lot or subdivision." Unlike § 1703(a)(2)(A) & (C), this provision is not explicitly grounded in fraud. Its language is found in Sections 11(a) and 12(a)(2) of the Securities Act of 1933, as well as in Rule 10b-5(b). Lacking clear guidance in the statute, we conclude that a pleading-

-11-

specific inquiry, like that fashioned by our sister circuits for determining whether Rule 9(b) applies to claims under Sections 11 and 12(a)(2), is the proper way to determine whether the particularity requirements of Rule 9(b) apply to a § 1703(a)(2)(B) claim. Thus, if the claim is pleaded separately from any (a)(2)(A) or (C) fraud claims, as here, and if there are no specific averments of fraud, only allegations of innocent or negligent misrepresentations and omissions, then the sufficiency of this claim is governed by the notice pleading standards of Rule 8(a).

Applying this standard, we conclude that Rule 8 governs the § 1703(a)(2)(B) allegations in Count I. Though Count I did not "expressly disavow[] any claim of fraud," unlike the complaint in <u>NationsMart</u>, 130 F.3d at 315, Count I was pleaded separately, focused on different conduct and representations, and contained no fraud averments, such as wrongful intent. Also indicative of an intent to plead non-fraudulent misrepresentation is the fact that Streambend withdrew a state law fraud claim in the initial complaint from its FAC and SAC. Thus, the allegations in Count I did not implicate an important purpose of Rule 9(b), to ensure that defendants may promptly respond to specific allegations of immoral conduct.

However, this conclusion does not end our inquiry, as we "may affirm the district court's decision on any ground supported by the record." <u>Wald v. Sw. Bell Corp. Customcare Med. Plan</u>, 83 F.3d 1002, 1005 (8th Cir. 1996). To satisfy Rule 8(a)'s pleading requirements, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation omitted). A complaint does not suffice if it "tenders naked assertions devoid of further factual enhancement." <u>Id.</u> (quotations omitted). When the particularity requirement of Rule 9(b) does not apply to a misrepresentation or omission claim such as Count I, the Rule 8(a)(2) standard -- "a short and plain statement of the claim showing that the pleader is entitled to relief" -- requires some attempt to show, "What is the representation? . . . Why is each representation false? Where was each representation made? Who made each

representation? When was each representation made?" In re Buffets, Inc. Sec. Litig., 906 F. Supp. 1293, 1298 (D. Minn. 1995).

The allegations in Count I fail to state a plausible claim under § 1703(a)(2)(B). First, regarding the allegations of untrue statements and omissions made prior to Streambend signing the purchase agreements, most involved contractual promises of future performance contained in the purchase agreements, Disclosure Statement, Declaration, "model representations and blue print schematics" -- for example, "Developers would timely complete," "Developers would deliver the Units," "Developers would timely disclose insulation values." In avoiding averments of fraud, Streambend failed to allege that the Developers never intended to fulfill their contractual promises to perform future undertakings. Absent an allegation defendants made promises they did not intend to keep, these allegations sound in breach of contract, not tortious misrepresentation. See Sindecuse v. Katsaros, 541 F.3d 801, 803-04 (8th Cir. 2008) (interpreting Missouri law); Restatement (Second) of Contracts § 159 cmt. c.

Second, Streambend alleged that the Declaration provided identical and thus false legal descriptions for the Ivy Residence and the related Ivy Hotel, but it failed to allege that this was an untrue and material statement of fact. Third, Streambend alleged that "Developers failed to disclose that two additional floors would be added . . ." but failed to allege when the floors were added and how this was a material non-disclosure "with respect to the sale," as § 1703(a)(2) requires.

Fourth, Streambend signed the purchase agreements on October 23, 2004. Many Count I allegations concern events occurring long after that date, in particular, the removal of Streambend's earnest moneys from the trust escrow accounts, the adding of additional floors during construction, the failure to timely complete construction of the purchased units and to timely deliver the units to Streambend after completion, the failure to pay for labor and materials furnished in construction, and

-13-

the failure to deliver a warranty deed. These later events obviously did not affect Streambend's decision to enter into the purchase agreements. Conceivably, depending on the way Streambend agreed to pay for the units, these events might have included untrue statements or omissions by which defendants obtained money "with respect to the sales." But Count I with its vague and conclusory allegations did not plausibly state such a claim.

For these reasons, we affirm the dismissal of Count I of the SAC because it failed to state a plausible claim upon which § 1703(a)(2)(B) relief can be granted.

**D. Streambend's Further Amendments.** Streambend contends the district court erred by not granting leave to file the Third and Fourth Amended Complaints. "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (quotations omitted).

In granting Streambend leave to file the SAC, Judge Boylan explicitly warned that repeated amendments were a wasteful, dilatory tactic and that the Streambend plaintiffs "have now had more than adequate opportunity to amend their pleadings." A few months later, in defiance of that warning, Streambend moved for leave to file a Third Amended Complaint while the motions to dismiss the SAC were pending. In January 2014, Judge Boylan denied the motion (which by then included a Fourth Amended Complaint) as moot but also noted that Streambend had "failed to cure deficiencies by amendments previously allowed," and that the motion "appears to have been brought in bad faith and with dilatory motive . . . to avoid dismissal after defendants' motions to dismiss were fully briefed, heard, and taken under advisement by the District Court." The district court did not abuse its discretion when it affirmed

Judge Boylan's decision not to permit Streambend more opportunities to file a complaint capable of surviving a motion to dismiss.

**E. The Proposed Wischermann Claims.** Streambend argues the district court also erred in affirming Judge Boylan's October 2012 Order denying Streambend leave to add Wischermann Partners, Inc. and Paul Wischermann as defendants to the ILSA claims in Count I and Count II of the SAC. The proposed SAC alleged that Wischermann Partners, Inc. and Paul Wischermann were liable because of their ownership interests in Wischermann Holdings. Judge Boylan concluded this amendment was futile because, "Plaintiffs have not adequately pleaded any theory under which Wischermann Partners, Inc. or Paul Wischermann could be liable merely by their association with Wischermann Holdings LLC."

We review *de novo* the denial of leave to amend based on futility. United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001), cert. denied, 536 U.S. 925 (2002). Here, the district court subsequently dismissed the ILSA claims against Wischermann Holdings, a ruling we have now affirmed. These subsequent rulings confirm that the district court did not err in affirming Judge Boylan's denial of leave to amend. The claims against the proposed new defendants were properly dismissed as to all defendants. Thus, as in Wald, 83 F.3d at 1005, "the court correctly determined that [Streambend] did not state a cause of action" against the proposed additional defendants.

### IV. The Commonwealth Summary Judgment

Ruling on cross motions for summary judgment, the district court dismissed Streambend's ILSA claims against Commonwealth because, as escrow and disbursing agent, Commonwealth did not act as a "developer or agent" within the meaning of 15 U.S.C. § 1703(a)(2). The ILSA defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any

-15-

lots in a subdivision." 15 U.S.C. § 1701(5). The statute defines an agent as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision," excluding attorneys providing solely legal services. § 1701(6). The district court concluded that Commonwealth served in neither capacity in the transactions at issue:

> It is undisputed that Commonwealth did not sell or offer to sell the condominiums to [Streambend]; that [Streambend] executed purchase agreements; that Commonwealth did not execute the purchase agreements; that [Streambend] paid earnest money to Commonwealth as contemplated by the purchase agreements; that Commonwealth deposited the earnest money in trust accounts; and that Commonwealth subsequently disbursed funds from the accounts. . . . Nothing about Commonwealth's role as escrow agent indicates that Commonwealth represented, or acted for or on behalf of, a developer in selling or offering to sell the condominiums to [Streambend]. Nothing about Commonwealth's agreement in December 2005 to supervise the disbursement of loan funds under the construction loan agreement reveals that Commonwealth represented, or acted for or on behalf of, a developer in selling or offering to sell the condominiums to [Streambend].

Reviewing the district court's ruling *de novo*, we agree. There is no evidence that Commonwealth made any representations or even became involved in the sales until after Streambend signed the purchase agreements. The only involvement of Commonwealth, a title company, was to accept earnest money deposits after sales were negotiated, and to disburse those funds for construction costs in accordance with the purchase agreements. On these undisputed facts, Commonwealth cannot be deemed an agent or developer because it did not, directly or indirectly, sell or offer to sell Ivy Tower condominium units, or represent a developer in doing so, as the statutory definitions require. Streambend argues that Commonwealth's "status as an agent is undisputed." That may be true, but Streambend still must prove that Commonwealth acted as agent "in selling or offering to sell" two units to Streambend.

-16-

"It is axiomatic that the statutory definition of the term excludes unstated meanings of that term." Meese v. Keene, 481 U.S. 465, 484 (1987).

Alternatively, Streambend argues, as it did to the district court, that Commonwealth may be liable because it aided and abetted violations of the ILSA. The district court assumed that a defendant may be liable for aiding and abetting an ILSA violation. The court then concluded "that [Streambend] failed to direct the Court to evidence that raises a genuine issue of material fact as to whether Commonwealth aided and abetted a developer's violation of the [ILSA]." On appeal, Streambend argues the legal issue at length. As to the factual record, Streambend notes only that Commonwealth's improper disbursing of escrow funds long after Streambend entered into the purchase agreements aided and abetted the developers' "wrongful conduct." But this was not evidence that Commonwealth aided or abetted a violation of § 1703(a)(2) "with respect to the sale" of any property. Thus, assuming without deciding the question of aiding and abetting liability, we affirm the district court's grant of summary judgment on this issue.

## V. The Supplemental Jurisdiction Issue

Finally, Streambend appeals the district court's decision to decline supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(2). "When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims." In re Canadian Import Antitrust Litig., 470 F.3d 785, 792 (8th Cir. 2006) (quotation omitted). Streambend does not challenge the district court's exercise of this discretion. Rather, it first argues that we should revive the state law claims if we reverse the dismissal of any ILSA claims. Our decision to affirm those dismissals moots this contention. Second, Streambend argues the district court should have remanded the state law claims to state court, rather than dismiss them without prejudice. We reject this contention because a district court has no

power to remand a non-removed case to state court.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988) ("because the plaintiff in Gibbs filed his suit in federal court, remand was not an option in the case") (referring to the landmark decision in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)).

For the foregoing reasons, the judgment of the district court is affirmed.

_____