# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3418

_____

Ray L. Olin; Carole J. Olin; Paul Johnson; Candace Johnson; Neal R. Slavick;
Dennis Olin; Carol Olin; David F. Heid; Tami A. Heid; Brent Heid; Michele
Burger; James Bahm; Gary A. Haugen; Melinda K. Haugen; Timothy Lee Johnson
and Wesley Johnson Partnership; Lee L. Ingalls; Matthew E. Ingalls; Thomas J.
Ingalls; Robert J. Slavick; Jacquelyn M. Slavick; Clark A. Norton; Debra D. Norton

*Plaintiffs - Appellants*

v.

Dakota Access, LLC

*Defendant - Appellee*

Contract Land Staff, LLC

*Defendant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 18, 2018
Filed: December 13, 2018

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

Plaintiffs, a group of landowners from Morton County, North Dakota, entered into easement contracts with Dakota Access, LLC, to allow construction of the Dakota Access Pipeline across their properties. They brought suit alleging that they were induced to sign the contracts based on various misrepresentations made by Dakota Access and its contracting affiliate Contract Land Staff, LLC (CLS). The landowners appeal the district court's[1] dismissal of their claim under N.D. Cent. Code § 49-22-16.1 for failure to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).

I

The Dakota Access Pipeline runs approximately 1,172 miles from oil production areas in North Dakota to terminal facilities in Illinois. Seventy-one miles of the pipeline run through Morton County. In 2014, Dakota Access and its agent CLS contacted plaintiffs, seeking easements across their property for purposes of building the pipeline. Plaintiffs allege they were all offered the same price: $180 for each 16.5-foot unit of pipe (called a "rod") that crossed their property, plus a twenty-percent bonus if they signed within thirty days. Dakota Access allegedly told plaintiffs that this was the best price anyone in Morton County would receive, and that if they refused to sign, either the pipeline would be moved or their land would be taken by eminent domain. All plaintiffs signed the contracts. Lee, Thomas, and Matthew Ingalls apparently negotiated a higher price of $400 per rod; all other plaintiffs agreed to the offered price.

Plaintiffs later learned that other landowners in the county negotiated better deals. Some allegedly received as much as $2,000 per rod in exchange for their

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

easements. Plaintiffs brought this suit, asserting that Dakota Access induced them to sign the easement contracts through misrepresentations. In addition to fraud claims against Dakota Access and CLS, plaintiffs brought a claim against Dakota Access under N.D. Cent. Code § 49-22-16.1. This statute provides a cause of action when easements are acquired using "harassment, threat, intimidation, misrepresentation, deception, fraud, or other unfair tactics." § 49-22-16.1(2).

Although it was not styled as a fraud claim, the district court concluded that plaintiffs' claim under § 49-22-16.1 sounded in fraud and relied on the same factual allegations as the two fraud claims. As such, all three claims were governed by the heightened pleading standard of Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Because plaintiffs failed to meet this standard, the court dismissed their claims.

Plaintiffs appeal only the dismissal of their claim under § 49-22-16.1. We review the district court's dismissal de novo, Olson v. Fairview Health Servs. of Minn., 831 F.3d 1063, 1070 (8th Cir. 2016), assuming all factual allegations in the complaint as true and construing all reasonable inferences in favor of the nonmoving party, Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012).

II

"In order to satisfy the pleading requirements of Rule 9(b), 'the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" Olson, 831 F.3d at 1070 (quoting United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006)). Particularly in cases with multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."

Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)). Plaintiffs' complaint lacks such details, and plaintiffs do not argue that, if Rule 9(b) applies, their complaint would survive. They argue instead that the district court erred in concluding that their claim under § 49-22-16.1 was subject to Rule 9(b)'s requirements.

"Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law . . . ." Republic Bank & Tr. Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012). Plaintiffs argue that Rule 9(b) should not apply because North Dakota law prohibits procuring easements through various means, not just fraud. It is true that § 49-22-16.1 penalizes obtaining easements through "harassment," "threat," "intimidation," and other "unfair tactics," as well as through "misrepresentation," "deception," and "fraud." But that does not clarify whether plaintiffs' *claim* is grounded in fraud such that Rule 9(b) applies. A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288 (3d Cir. 1992).

Under "a pleading-specific inquiry" in which the focus is on "the elements of the claims asserted," plaintiffs' claim under § 49-22-16.1 sounds in fraud. See Streambend Properties II, LLC, 781 F.3d at 1012–13; see also Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996) (discussing application of Rule 9(b) to all claims based on "a unified course of fraudulent conduct"). In support of all three claims, plaintiffs allege that Dakota Access induced them to sign the easement contracts by making representations about what would happen if they refused: they would lose the signing bonus and either the pipeline would be moved elsewhere or the easements would be taken via eminent domain. The complaint repeatedly asserts that these representations were false and amounted to fraud.

-4-

Plaintiffs' additional characterization of Dakota Access's statements as "misrepresentations" or "deception" does not help them. Under North Dakota law, such allegations sound in fraud. For instance, the state's consumer protection statute declares unlawful the "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. Cent. Code § 51-15-02. Parties alleging violations of this provision must satisfy the requirements of Rule 9(b). See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 350 F. Supp. 2d 160, 198 (D. Me. 2004) (citing State ex rel. Spaeth v. Eddy Furniture Co., 386 N.W.2d 901, 905 n.5 (N.D. 1986)). And North Dakota's tort of deceit, which allows a cause of action against "[o]ne who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk," N.D. Cent. Code § 9-10-03, also requires compliance with Rule 9(b). Shangcheng Dev. LLC v. Norvanta, LLC, No. 4:14-CV-164, 2015 WL 11143143, at *2 (D.N.D. May 27, 2015). We see no reason to apply a different standard to plaintiffs' allegations, which use the same terminology.

Plaintiffs' remaining allegations fail to state a claim under the ordinary notice pleading standard. For instance, the complaint alleges, without further explanation or detail, that "[p]ersons acting on Dakota Access's behalf harassed, threatened, and intimidated" plaintiffs. This is nothing more than a "formulaic recitation of the elements of a cause of action," and it is insufficient to survive dismissal. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To the extent that plaintiffs allege a non-fraud claim under § 49-22-16.1, it was properly dismissed.

III

Accordingly, the judgment of the district court is affirmed.

_____

-5-